IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
March 21, 2012 Session

**PNC MULTIFAMILY CAPITAL INSTITUTIONAL FUND XXVI LIMITED PARTNERSHIP, ET AL. v. BLUFF CITY COMMUNITY DEVELOPMENT CORPORATION, ET AL.**

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-08-1494      Arnold B. Goldin, Chancellor**

---

**No. W2011-00325-COA-R3-CV - May 4, 2012**

---

This is an appeal from the grant of a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss in favor of Appellees, an attorney, her professional limited liability company ("PLLC"), a title company, and a law firm. As to the law firm, the trial court found that the causes of action, if any, sounded in legal malpractice and were barred by the applicable one-year statute of limitations found at Tennessee Code Annotated Section 28-3-104(a)(2). As to the attorney, the PLLC, and the title company, the trial court found that any causes of action alleged against these Appellees sounded in tort and were claims for unliquidated damages; thus the court held that it lacked jurisdiction under Tennessee Code Annotated Section 16-11-102. After reviewing the Complaint, we conclude that: (1) the trial court did not apply the discovery rule in reaching its conclusion that Appellants' claims that sound in legal malpractice are barred by the statute of limitations; (2) applying the discovery rule, there is nothing in the pleadings from which to infer that the Appellants' knowledge of breach or misappropriation on the part of the general partner also means that Appellants knew, or should have known, about any wrongdoing on the part of the law firm, the PLLC, and the attorney; (3) therefore, any claims sounding in legal malpractice, against the law firm, the attorney, and her PLLC, survive the motion to dismiss; however, because there was no attorney-client relationship between the Appellants and the title company, claims for legal malpractice cannot lie against the title company; (4) many of the claims against the law firm, the PLLC, and the title company that sound in tort are not sufficiently pled under Tennessee Rule of Civil Procedure 8.01 or, where they sound in fraud, are not pled with particularity as required by Tennessee Rule of Civil Procedure 9.02; these claims were properly dismissed with the following exceptions: (a) the Complaint does sufficiently plead a cause of action for aiding and abetting the breach of a fiduciary duty against the title company, the law firm, the attorney, and her PLLC; to the extent that the alleged aiding and abetting was the result of a plan or design by the Appellees, conspiracy may also lie for that tort; (b) the Complaint does sufficiently plead causes of action for misappropriation or conversion and conspiracy

against the Appellee attorney, individually, but not against the law firm, the title company, or the PLLC (due to lack of particularity in the pleadings as to these Appellees); (5) because the amounts of the alleged misappropriations are known, the damages sought are not all unliquidated; therefore, the chancery court has jurisdiction. Reversed in part, affirmed in part, and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Reversed in Part, Affirmed in Part, and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Robert L. Crawford, Joseph B. Reafsnyder, and Charles L. Perry , Memphis, Tennessee, for the appellants, PNC Multifamily Capital Institutional Fund XXVI Limited Partnership, PNC Multifamily Capital Institutional Fund XXX Limited Partnership, PNC Multifamily Capital Institutional Fund XXI Limited Partnership, Columbia Housing SLP Corporation, April Woods Apartments Limited Partnership, Eagles Landing Apartments Limited Partnership, and Harmony Woods Apartments Limited Partnership.

Lucian T. Pera, Memphis, Tennessee, for the appellees, Fearnley and Califf, PLLC.

Robert A. Cox and Ronna D. Kinsella, Memphis, Tennessee, for the appellees, Vanecia Kimbrow, Tate and Kimbrow PLLC, and Community Equity & Title, INC.

Bryan Matthew Meredith, Memphis, Tennessee, for the appellees, April Mabry and Johnnie Briggs.

Robert L.J. Spence, Jr., Memphis, Tennessee, for the appellees, Jesse Briggs and Project Love Incorporated.

**OPINION**

The Plaintiffs/Appellants in this case are: PNC Multifamily Capital Institutional Fund XXVI Limited Partnership ("Fund XXVI"), PNC Multifamily Capital Institutional Fund XXX Limited Partnership ("Fund XXX"), both Delaware limited partnerships; PNC Multifamily Capital Institutional Fund XXI Limited Partnership ("Fund XXI"), a Massachusetts limited partnership, Columbia Housing SLP Corporation ("Columbia Housing"), an Oregon corporation; and three Tennessee limited partnerships: Eagles Landing Apartments, LP ("Eagles Landing"), April Woods Apartments, L.P. ("April Woods"), and

Harmony Woods Apartments, L.P. ("Harmony Woods").[1]

On November 1, 2004, Fund XXI, Columbia Housing and Bluff City Community Development Corporation, Inc. ("Bluff City") entered into a partnership agreement to create Harmony Woods Apartments, L.P. The partnership agreement was intended to take advantage of the low income housing tax credit created by Congress, and was for the purpose of building and running certain low-to-moderate-income level apartment complexes in Memphis.

A year after the initial agreement, on November 1, 2005, Fund XXVI, Columbia Housing, Bluff City, and another non-profit entity, Project Love, by and through its owners, Jesse and Johnnie Briggs, entered into a second partnership agreement to create an entity known as April Woods Apartments, L.P.[2] One month after that, a third and final partnership agreement was created by Fund XXX, Columbia Housing, Bluff City, and Orson Sykes for the purpose of creating an entity known as Eagles Landing Apartments, L.P.[3]

Tate & Kimbrow, P.L.L.C. and Fearnley & Califf, P.L.L.C. are Shelby County law firms both doing business as Fearnley, Califf, Martin, McDonald Tate & Kimbrow ("Fearnley & Califf").[4] At all material time, Vanecia Kimbrow was an attorney with and member of Fearnley & Califf. Through Ms. Kimbrow, Fearnley & Califf represented April Woods, Harmony Woods, and Eagles Landing. At the same time, Fearnley & Califf, again through Ms. Kimbrow, also represented Bluff City and its primary executive, Carl Mabry. As part of the transactions outlined in the foregoing paragraph, Ms. Kimbrow, Fearnley & Califf, and Community Equity & Title, Inc. ("Community Title," and together with Ms.

---

[1] Fund XXX is a limited partner in the Eagles Landing Partnership. Fund XXVI is a limited partner in the April Woods Partnership. Fund XXI is a limited partner in the Harmony Woods Partnership. Columbia Housing is a limited partner in the April Woods Partnership, the Eagles Landing Partnership, and the Harmony Woods Partnership. On April 12, 2008, Columbia Housing became the general partner in the April Woods, Eagles Landing, and Harmony Woods partnerships when Bluff City was removed as the general partner of these partnerships, *see infra*.

[2] Project Love is a Class B Limited Partner of April Woods.

[3] This Court has previously addressed certain aspects of the various partnership agreements in *Eagles Landing Development, LLC v. Eagles Landing Apartments, LP*, No. W2011–00689– COA–R3–CV, 2012 WL 346451 (Tenn. Ct. App., Feb. 2, 2012).

[4] From the pleadings, it is difficult to determine the exact relationship between Ms. Kimbrow, Tate & Kimbrow, PLLC, and Fearnley & Califf. For purposes of this appeal, and in the interest of judicial economy, Tate & Kimbrow, PLLC, which from the statements contained in the pleadings is doing business as Fearnley & Califf, will be treated as part of Fearnley & Califf unless named individually.

Kimbrow and Tate & Kimbrow, PLLC, d/b/a Fearnley & Califf, "Appellees") provided closing documents and opinion letters relating to the validity and execution of the partnership agreements.[5]

On August 12, 2008, Appellants removed Bluff City from its position as general partner of the partnerships. This decision was brought about by three categories of alleged wrongdoing on the part of Bluff City: (1) defaults under loan agreements and payment obligations; (2) transfer of interests in real property belonging to the limited partnerships without the limited partners' consent and misappropriation of funds of the limited partnerships; and (3) failure to meet various reporting obligations. The instant appeal involves the second category of alleged wrongdoing—i.e., improper transfers of interest in real property and alleged misappropriation of funds, and specifically Appellees' alleged role therein. In the second amended complaint, which is the subject of this appeal, Appellants identify the following instances of alleged misappropriation or diversion of partnership funds by Bluff City and/or Mr. Mabry:

- May 25, 2007 withdrawal of $3,462.81 from April Woods' account.
- November 20, 2007 withdrawal of $347,265.67 from April Woods' account.
- December 6, 2007 withdrawal of $100 from April Woods' account.
- December 6, 2007 withdrawal of $14,029.79 from April Woods' account.
- December 6, 2007 $240.82 check written from April Woods' account.
- December 6, 2007 $445.95 check written from April Woods' account.
- December 10, 2007 withdrawal of $36,615.37 from April Woods' account.
- December 10, 2007 withdrawal of $5,370 from April Woods' account.
- December 2007 four checks written from April Woods' account

---

[5] We note an error in the notices of appeal filed in this case. In addition to Ms. Kimbrow, Community Title, Tate & Kimbrow, PLLC, and Fearnley & Califf, the notices of appeal also list April Mabry, Johnnie Briggs, Jesse Briggs, and Project Love Incorporated as Appellees. As discussed herein, the specific orders appealed (i.e., December 3, 2010 and December 8, 2010) adjudicate only those claims against Ms. Kimbrow, Tate & Kimbrow, PLLC, Community Title, and Fearnley & Califf. By the inclusion of Tennessee Rule of Civil Procedure 54.02 language, these orders are made final and appealable only as to these Appellees.

in amounts of $220, $17, $190, and $3,260.

- February 2, 2008 check written from April Woods' account in an unspecified amount.
- March 3, 2008 check written from April Woods' account in the amount of $10,746.58.
- June 18, 2008 check written from April Woods' account in the amount of $21,941.42.
- July 16, 2008 check written from April Woods' account in the amount of $445.95.
- July 17, 2008 check written from April Woods' account in the amount of $240.82.
- August 25, 2008 check written from April Woods' account in the amount of $240.82.
- August 25, 2008 check written from April Woods' account in the amount of $490.54.

In addition to the foregoing, Appellants further allege that some thirty-seven cash withdrawals were made by Mr. Mabry between May 2006 and November 2008 from two different April Woods' accounts in the total amount of approximately $165,000.00, and that these funds were used by Mabry or Bluff City for unauthorized purposes. The Appellants also allege that seven different cash withdrawals were made by Mabry between January 2007 and August 2008 from an Eagles Landing account in the sum total of approximately $92,000.00, and that these funds were used by Mabry or Bluff City for unauthorized purposes. Appellants further allege that Mabry improperly authorized Eagles Landing to accept funds as loans in the alleged amount of $13,000.00 from the Horizon Financial Group. Finally, Appellants make an allegation that there were other unspecified occasions on which Mabry, Bluff City, "or other defendants" made cash withdrawals from April Woods, Eagles Landing, or Harmony Woods accounts, or caused checks to be written on said accounts, or otherwise misappropriated funds or property belonging to those entities.

On August 13, 2008, Appellants filed the original complaint and application for injunctive relief in this case. Fearnley & Califf was not named as a defendant in the original complaint; however, on June 30, 2009, Appellants issued a subpoena, seeking documents from Ms. Kimbrow. On November 12, 2009, Appellants filed their first amended complaint, adding new claims and, for the first time, naming Fearnley & Califf as party-defendants. Ms. Kimbrow was also added as a defendant at this time. Fearnley & Califf filed its answer to the amended complaint on January 13, 2010. At a hearing on July 6, 2010, the trial court informed Appellants that their amended complaint was not "an example of clarity," and ordered Appellants to further amend the complaint to more clearly state Appellants' allegations against Appellees and the other defendants. Accordingly, on July 20, 2010,

Appellants filed their second amended complaint and application for injunctive relief (the "Complaint"). The Complaint is over fifty pages in length, contains two hundred and ninety-four paragraphs, and includes over twenty counts. Each of the counts included in the Complaint can be classified into one of two categories: (A) counts that are asserted against Appellees and one or more of the other defendants: Counts VII, VIII, IX, XVI, XVII, XVIII, XIX, XX, XXI, XXII, XXIII, XXIV, and XXVI; and (B) counts that are not asserted against Appellees, but only against the other defendants who are not parties to this appeal: Counts IV, V, VI, X, XI, XII, XIII, XIV, XV, XXV, XXVII. As is relevant to the instant appeal, we are concerned only with those allegations made against our Appellees (i.e., category A above). We will discuss the specific pleadings below.

On August 19, 2010, Fearnley & Califf filed a motion to dismiss the Complaint pursuant to Tennessee Rule of Civil Procedure 12.02(6). On August 26, 2010, Ms. Kimbrow, Tate & Kimbrow, P.L.L.C., and Community Title filed a separate Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss. Despite having been filed separately, both motions to dismiss assert the same four grounds for dismissal, namely that:

> (1) to the extent they exist, Appellants' claims against Appellees were properly classified as legal malpractice claims, for which the statute of limitations, as set forth at Tennessee Code Annotated Section 28-3-104(a)(2), had expired.

> (2) Appellants failed to state any cause of action against Appellees as to counts IV, V, VI, X, XI, XII, XIII, XIV, and XV;

> (3) Appellants' claims of misrepresentations, fraud, conspiracy, and misappropriation (*see* category A counts above), to the extent that these allegations were made against the Appellees, were not pled with sufficient specificity, in accordance with Tennessee Rule of Civil Procedure 9.02; and

> (4) to the extent the Appellants did properly plead any claims against the Appellants, the trial court lacked subject-matter jurisdiction, under Tennessee Code Annotated Section 16-11-102.

Following hearings, on December 3, 2010 and December 8, 2010 respectively, the trial court entered orders granting Fearnley & Califf's motion to dismiss, and Ms. Kimbrow, Tate & Kimbrow, P.L.L.C, and Community Title's motion to dismiss. Both of these orders

contain Tennessee Rule of Civil Procedure 54.02 language and, consequently, are final for purposes of appeal. As grounds for dismissal of the lawsuit as to Fearnley & Califf, the trial court specifically found:

> 1. As to Counts VII, VIII, IX, XVI, XVII, XVIII, XIX, XX, XXI, XXII, XXIII, XXIV, and XXVI of the Second Amended Complaint:
>
> a. With respect to the Plaintiffs that were former clients of Fernley & Califf, Plaintiffs April Woods I Limited Partnership, Harmony Woods I Limited Partnership, and Eagles Landing I Limited Partnership, the gravamen of those claims is legal malpractice and, as such, those claims are time-barred under the statute of limitations set forth in Tenn. Code Ann. §28-3-104(a)(2). With respect to the Plaintiffs who were never clients of Fearnley & Califf [i.e., Fund XXVI, Fund XXX, Fund XXI, and Columbia Housing], the gravamen of those claims is still legal malpractice and such claims are time-barred by the same statute of limitation.
>
> b. In the alternative, and to the extent that claims by any of the Plaintiffs could be considered not to be claims for legal malpractice, these Counts fail to plead allegations as against Fearnley & Califf with the particularity required by Tenn. R. Civ. P. 9.02.
>
> 2. As to Counts IV, V, VI, X, XI, XII, XIII, XIV, XV, XXV, and XXVII of the Second Amended Complaint, those Counts should be dismissed as they either do not seek to assert any claim at all against Fearnley & Califf or, to the extent Plaintiffs do seek to pursue any such Counts against Fearnley & Califf, the Second Amended Complaint simply fails to make allegations to prove the elements of such claims as against Fearnley & Califf sufficient to survive dismissal for failure to state a claim.
>
> Accordingly, the Court orders. . . that Plaintiffs' Second Amended Complaint should be and is dismissed with prejudice in its entirety against Defendant Fearnley & Califf.

In its December 8, 2011 order, dismissing Appellants' case as to Ms. Kimbrow, Tate

& Kimbrow, P.L.L.C., and Community Title, the trial court specifically found that:

> [E]ach of Plaintiffs' claims against these Defendants arise in tort and seek unliquidated damages. The Court therefore finds that it lacks subject matter jurisdiction to hear Plaintiffs' claims against Defendants, Vanecia Kimbrow, Tate & Kimbrow, and Community Equity & Title, Inc., and dismisses same without prejudice.

Appellants appeal both the December 3, 2011, and the December 8, 2011 orders, dismissing their lawsuit against Fearnley & Califf, Ms. Kimbrow, Tate & Kimbrow, P.L.L.C., and Community Title. Appellants raise six issues as stated in their brief:

> 1. The trial court erred in dismissing the claims against Fearnley [& Califf] because [the] Complaint adequately alleged claims against this Defendant for receipt of and/or benefit from misapplied partnership property.
>
> 2. The trial court erred in dismissing the claims against Fearnley [& Califf] because [the] Complaint adequately alleged claims against this Defendant for knowing participation in the breach of duty and misappropriation of partnership property.
>
> 3. The trial court erred in dismissing the claims against Fearnley [& Califf] because [the] Complaint adequately alleged claims of conspiracy against this Defendant.
>
> 4. The trial court erred in dismissing the claims against Fearnley [& Califf] because [the] Complaint adequately alleged claims that are not grounded in legal malpractice and, therefore, [are] not subject to the applied statute of limitations.
>
> 5. The trial court erred in dismissing the claims of breach of contract, fraud, and misrepresentation against Fearnley [& Califf] because [the] Complaint adequately alleged these claims.
>
> 6. The trial court erred in dismissing Defendants Kimbrow, Tate & Kimbrow, and Community Title from this action because the claims against these Defendants are not grounded solely in tort, but also, contract, and are not solely for unliquidated

damages, thus providing the trial court with subject matter jurisdiction over these Defendants.

An essential purpose of a pleading is to give notice of the issues to be tried so that the opposing party will be able to prepare for trial. ***Abshure v. Methodist Healthcare-Memphis Hosps.***, 325 S.W.3d 98, 103 (Tenn. 2010). A Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss a complaint for failure to state a claim upon which relief can be granted tests the legal sufficiency of the complaint. ***Lanier v. Rains***, 229 S.W.3d 656, 660 (Tenn. 2007). It admits the truth of all relevant and material allegations, but asserts that such allegations do not constitute a cause of action as a matter of law. *See **Riggs v. Burson***, 941 S.W.2d 44, 47 (Tenn. 1997). These motions are not favored and are rarely granted in light of the liberal pleading standards contained in the Tennessee Rules of Civil Procedure. ***Dobbs v. Guenther***, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992). Moreover, pleas or counts contained in a complaint will be given the effect required by their content, without regard to the name given them by the pleader. ***State By and Through Canale ex rel. Hall v. Minimum Salary Dept. of African Methodist Episcopal Church, Inc.***, 477 S.W.2d 11 (Tenn. 1972).

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, we are limited to an examination of the complaint alone. *See **Wolcotts Fin. Serv., Inc. v. McReynolds***, 807 S.W.2d 708, 710 (Tenn. Ct. App. 1990). The basis for the motion is that the allegations in the complaint, when considered alone and taken as true, are insufficient to state a claim as a matter of law. *See **Cornpropst v. Sloan***, 528 S.W.2d 188 (Tenn. 1975). Although allegations of pure legal conclusion will not sustain a complaint, *see **Ruth v. Ruth***, 213 Tenn. 82, 372 S.W.2d 285, 287 (1963), a complaint "need not contain in minute detail the facts that give rise to the claim," so long as the complaint does "contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial." ***Donaldson v. Donaldson***, 557 S.W.2d 60, 61 (Tenn. 1977); ***White v. Revco Discount Drug Centers***, 33 S.W.3d 713, 718, 725 (Tenn. 2000); *accord*, ***Givens v. Mullikin ex rel McElwaney***, 75 S.W.3d 383, 391, 399, 403-404 (Tenn. 2002). In short, a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss seeks only to determine whether the pleadings state a claim upon which relief can be granted, and such a motion challenges the legal sufficiency of the complaint, not the strength of the plaintiff's proof. ***Bell ex rel. Snyder v. Icard***, 986 S.W.2d 550, 554 (Tenn.1999). In considering such a motion, the court should construe the complaint liberally in favor of the plaintiff, taking all the allegations of fact therein as true. *See **Cook ex. rel. Uithoven v. Spinnaker's of Rivergate, Inc.***, 878 S.W.2d 934, 938 (Tenn.1994). However, we are not required to accept as true factual inferences or conclusions of law. ***Riggs v. Burson***, 941 S.W.2d 44, 47–48 (Tenn.1997). An appellate court should uphold the grant of a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of a claim that will entitle him or her to relief. ***Young v. Barrow***, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003).

We further note that Tennessee Rule of Civil Procedure 12.02(6) motions are not designed to correct inartfully drafted pleadings. *Dobbs v. Guenther*, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992). However, a complaint should not be dismissed, no matter how inartfully drafted, if it states a cause of action. *Id.* (citing *Paschall's, Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150, 152 (Tenn.1966); *Collier v. Slayden Bros. Ltd. Partnership*, 712 S.W.2d 106, 108 (Tenn. Ct. App.1985)). Nonetheless, there is no duty on the part of the court to create a claim that the pleader does not spell out in his complaint. *Utter v. Sherrod*, 132 S.W.3d 344 (Tenn. Ct. App. 2003), *perm. app. denied* (Tenn. March 8, 2004). But while we should not endeavor to create claims where none exist, we must always look to the substance of the pleading rather than to its form. *Dobbs*, 846 S.W.2d at 273 (citing *Donaldson v. Donaldson*, 557 S.W.2d 60, 62 (Tenn.1977); *Usrey v. Lewis*, 553 S.W.2d 612, 614 (Tenn. Ct. App. 1977)).

Because a Tennessee Rule of Civil Procedure 12.02(6) motion tests the legal sufficiency of the complaint, we now turn to the specific pleadings contained in the Appellants' Complaint, starting with the factual allegations:

> 56. On August 1, August 7, and September 13, 2007, Bluff City purported to improperly cause the April Woods Partnership to enter into Joint Use Agreements with April Woods Apartments II, L.P., without the consent of the April Woods Limited Partners. These Joint Use Agreements purported to give the April Woods II Apartment, L.P. the right to use various facilities . . . all of which are owned and were constructed and paid for by the April Woods Partnership. These grants violated, *inter alia*, Sections 6.3(b) and 6.9(a)(6), (12), and (13) of the April Woods Partnership Agreement.

> ***

> 58. These Joint Use Agreements were prepared by Kimbrow, Fearnley Califf and/or Community Title. Kimbrow, Fearnley Califf, Community Title and April Woods II each knew or should have known that prior written consent was required and that the agreements violated the April Woods Partnership Agreement.

> ***

> 66. On or about December 14, 2007, without having obtained

the prior consent of the Special Limited Partners, Bluff City caused the Eagle Landing Partnership to transfer, by quit claim deed, the Phase II Parcel to Eagles Landing Apartments, II, L.P. This transfer violates, *inter alia*, Sections 6.3(b) and 6.9(a)(6), (12) and (13) of the Eagles Landing Partnership Agreement.

67. This quit claim deed was prepared by Kimbrow, Fearnley Califf and/or Community Title, and was notarized by Kimbrow. Kimbrow, Fearnley Califf and Community Title each knew or should have known that prior written consent was required and that the transfer violated the Eagles Landing Partnership Agreement.

\*\*\*

83. Kimbrow and Fearnley Califf served as counsel for each of the Partnerships, as well as Defendants Mabry, Bluff City, Project Love, Sykes, April Woods II and Eagles Landing II. At the times in question, Kimbrow was a member of the Fearnley Califf law firm and a principal in Community Title.

84. Additionally, on or about January 29, 2008, Bluff City designated Kimbrow as Bluff City's "authorized agent," who was to be the "primary contact for all business pertaining to the following developments: April Woods, Harmony Woods, Eagles Landing."

85. On information and belief, Kimbrow, Community Title, and/or Fearnley Califf represented or had other business relationships with other Defendants in this cause, and there are additional relationships between the various Defendants that have caused or contributed [to] the breaches and misappropriation of funds and other property as set forth herein.

86. As part of the transaction by which Fund XXX and Columbia Housing became limited partners in the Eagles Landing Partnership, an opinion of counsel was provided by Kimbrow and Fearnley Califf, which included the following:

    (2) the Partnership Agreement has been duly

executed and delivered; complies with the Uniform Limited Partnership Act . . . and all other laws of the State; is a legal, valid and binding agreement of the General Partner, the Class B Limited Partner and the Developer; and . . . is enforceable according to its terms. . .

87. This opinion letter was given as counsel (and the agent) for, *inter alia*, Bluff City and Sykes.

88. Similar opinion letters were provided by Kimbrow and Fearnley and Califf in connection with the transactions by which Fund XXVI and Columbia Housing became limited partners in the April Woods Partnership, and by which Fund XXI and Columbia Housing became limited partners in the Harmony Woods Partnership. The April Woods opinion letter was given as counsel (and agent) for, *inter alia*, Bluff City and Project Love, and the Harmony Woods opinion letter was given as counsel (and agent) for, *inter alia*, Bluff City.

89. Closing of the transaction by which Fund XXX and Columbia Housing became limited partners in the Eagles Landing Partnership was handled by Kimbrow and Community Title, who acted as escrow agent. On information and belief, Fearnley and Califf was also involved in the closing and acting as escrow agent . . . .

\*\*\*

90. Closing of the transaction by which Fund XXVI and Columbia Housing became limited partners in the April Woods Partnership, and by which Fund XXI and Columbia Housing became limited partners in the Harmony Woods Parternship, were also handled by Kimbrow and Community Title, who acted as escrow agent in each instance. Closing instruction letters were also provided in connection with each of those transactions. On information and belief, Fearnley and Califf was also involved in these closings and acting as an escrow agent.

The Complaint goes on to outline instances in which Bluff City and/or Mr. Mabry allegedly misappropriated funds of the Partnerships. Some of the misappropriations were alleged to have been made to pay promissory notes owed by Bluff City and Mr. Mabry and/or to pay personal expenses of Mr. Mabry. For each of these alleged misappropriations, the Complaint avers that:

> On information and belief, each of the other Defendants knew that funds were being misappropriated and that the partnership funds were not being used for a proper partnership obligation.

Aside from the general allegation that the Defendants knew about the various misappropriations, the Appellants specifically plead that $347,265.67 of April Woods' funds were misappropriated for "Vanecia Kimbrow Loan Payoff":

> 102. On or about November 30, 2007, Mabry and/or Bluff City withdrew the sum of $347,265.67 from the same April Woods Partnership account at SunTrust. The funds withdrawn from the April Woods Partnership account were then used to purchase a Cashier's Check (number 413187971). Once again, although the funds were taken from an April Woods Partnership account, the Purchaser was listed on the Cashier's Check as "Carl Mabry." This Cashier's Check was made payable to Oakland Deposit Bank, with a notation that it was "For: Vanecia Kimbrow Loan Payoff."

> 103. On information and belief, these funds were used to make payment to Oakland Deposit Bank for loans on which Kimbrow, or an affiliate of Kimbrow, was the borrower or guarantor, and/or were deposited into accounts held in the name of Kimbrow. These include payments on Oakland Deposit Bank loans ending in -4060, -81761, -81751, -81750, -01750 and -1762, and deposited into the Oakland Deposit Bank account ending in -81701.

> 104. Mabry, Bluff City, Kimbrow, Fearnley Califf and Community Title knew that the funds were being misappropriated and that the partnership funds were not being used for a proper partnership obligation.

Turning to the causes of action alleged against the Appellees, as noted above, the

parties concede that the instant appeal involves only counts VII, VIII, IX, XVI, XVII, XVIII, XIX, XX, XXI, XXII, XXIII, XXIV, and XXVI.

Count VII is titled "Cause of Action— Breach of Duty (April Woods Transfers and Misappropriation)," and provides, in relevant part:

160. Bluff City not only breached the April Woods Partnership Agreement, but Bluff City, Mabry, Kimbrow, Fearnley Califf and Community Title also breached their respective fiduciary or other duties to the April Woods Partnership and the April Woods Limited Partners by, *inter alia*, transferring an interest in property owned by the April Woods Partnership without obtaining the required consent of the April Woods Limited Partners. This conduct in this regard is all the more egregious because the transfer was to another entity, April Woods Apartments II, L.P., in which Bluff City had an interest, and which was concurrently represented by Kimbrow, Fearnley Califf and Community Title.

161. Bluff City also not only breached the April Woods Partnership Agreement, but Bluff City, Mabry, Kimbrow, Fearnley Califf and Community Title also breached their respective fiduciary or other duties to the April Woods Partnership and the April Woods Limited Partners by, *inter alia*, misappropriation of funds or other property.

162. While Bluff City was still a General Partner of the Partnership, Bluff City, Mabry, Kimbrow, Fearnley Califf and Community Title made continued representations about the financial status and condition of the project without disclosing the misappropriations, unauthorized loans, commingling and unauthorized transfers.

\*\*\*

168. Each of the other Defendants aided and abetted in, benefitted from, participated in, conspired with, assisted and encouraged Bluff City's breaches, and are therefore likewise responsible.

-14-

Count VII is titled "Cause of Action—Breach of Duty (Eagles Landing Transfer and Misappropriation);" the relevant pleadings thereunder are as follows:

> 179. Bluff City not only breached the Eagles Landing Partnership Agreement, but Bluff City, Mabry, Kimbrow, Fearnley Califf and Community Title also breached their respective fiduciary or other duties to the Eagles Landing Partnership and the April Woods Limited Partners by, *inter alia*, misappropriating funds or other property.

> 180. While Bluff City was still a General Partner of the Partnership, Bluff City, Mabry, Kimbrow, Fearnley Califf and Community title made continued representations about the financial status and condition of the project without disclosing the misappropriations, unauthorized loans, commingling, and unauthorized transfers. On information and belief the other Defendants had knowledge that such misrepresentations were being made and that such omissions were occurring.

Count IX, titled "Cause of Action—Breach of Duty (Harmony Woods Misappropriation)" provides, in relevant part:

> 196. Bluff City not only breached the Harmony Woods Partnership Agreement, but Bluff City, Mabry, Kimbrow, Fearnley Califf and Community Title also breached their respective fiduciary or other duties to the Harmony Woods Partnership and the April Woods Limited Partners by, *inter alia*, misappropriating funds or other property.

> 197. While Bluff City was still a General Partner of the Partnership, Bluff City, Mabry, Kimbrow, Fearnley Califf and Community title made continued representations about the financial status and condition of the project without disclosing the misappropriations, unauthorized loans, commingling, and unauthorized transfers. On information and belief the other Defendants had knowledge that such misrepresentations were being made and that such omissions were occurring.

Counts XVI, XVII, and XVIII are all requests for accountings of all partnership funds for Eagles Landing, Harmony Woods, and April Woods respectively, stating that "each of

the Defendants be required to account for all . . . partnership funds or property that are now or have been in their possession, including but not limited to the specific funds and property set forth above."

Counts XIX, XX, and XXI allege misrepresentations regarding Eagles Landing, Harmony Woods, and April Woods. While these counts aver that it was Bluff City and Mabry who actually made negligent misrepresentations, concerning the Appellees, the complaint states only that:

> Each of the other Defendants conspired and acted in concert or pursuant to a common design in connection with the misappropriation of partnership funds and property. Alternatively, each gave substantial assistance and encouragement to the other. Further, same was done with knowledge that the other was breaching a duty. Therefore, each of the Defendants is also liable to Plaintiffs.

Counts XXII, XXIII, and XXIV are all claims for "misrepresentations regarding enforceability of [the three partnership agreements, i.e., Eagles Landing, Harmony Woods, and April Woods]." Concerning the Appellees, each count avers the same:

> [At Paragraphs 253, 263, and 273]. Defendants Kimbrow, Fearnley Califf, Bluff City, Sykes, and Community Title would be liable for breach of the terms of the opinion letter. . . .
>
> [At Paragraphs 254, 264, and 274]. Additionally, Defendants Kimbrow, and Fearnley Califf purported to make such statements as counsel for [the respective Partnership]. Thus, any untrue statement also breached a duty to [the respective Partnership].
>
> [At Paragraphs 255, 265, and 275]. Defendants Kimbrow, Fearnley Califf and Community Title would be liable for breach of the closing instructions.
>
> [At Paragraphs 256, 266, and 276]. Defendants Kimbrow, Fearnley Califf, Community Title, Bluff City and Sykes would be liable for fraud. There was a knowing, intentional representation of fact as to the enforceability of the [respective partnership agreements]. If such agreement is not enforceable

-16-

according to its terms, then such representation was false, was relied upon by the. . .Plaintiffs, and such false representation caused injury to the. . .Plaintiffs.

[At Paragraphs 257, 267, and 277]. Defendants Kimbrow, Fearnley Califf, Community Title, Bluff City and Sykes would also be liable for fraud due to a failure to disclose material facts, despite a duty to make such disclosure. If such agreement is not enforceable according to its terms, then such representation was false, was relied upon by the. . . Plaintiffs, and such false representation caused injury to the. . .Plaintiffs.

[At Paragraphs 258, 268, and 278]. Defendants Kimbrow, Fearnley Califf, Community Title, Bluff City and Sykes would also be liable for negligent misrepresentation. The statements as to the enforceability were made by such Defendants without exercising reasonable care in obtaining or communicating the information; were relied upon by the . . .Plaintiffs; and caused injury to the. . . Plaintiffs.

[At Paragraphs 259, 269, and 279]. Kimbrow, Fearnley Califf and Community Title, together with Bluff City, Mabry . . . acted in concert or pursuant to a common design in connection with providing the opinion letter and closing of the transaction and the tortious acts committed in connection therewith. Alternatively, each gave substantial assistance and encouragement to the other. Further, same was done with knowledge that the other was breaching a duty.

Count XXVI is a claim for exemplary damages, averring that "[t]he conduct of the Defendants is such that it justifies an award of exemplary damages to Plaintiff." At paragraph 287 of the complaint, Appellants states that they "have adequately pleaded causes of action for breach of contract, [and] breach of duty . . . ." In the prayer for relief, Appellants seek, *inter alia*, "judgment for breach of contract, breach of duty, misappropriation and misrepresentation . . . ."

## I. **Legal Malpractice**

As set out above, the trial court dismissed the Complaint as to Fearnley & Califf on the ground that all claims asserted against it were legal malpractice claims and, as such, were

barred by the one year statute of limitations set out at Tennessee Code Annotated Section 28-3-104(a)(2). This ruling presents a legal conundrum for at least two reasons. First, it is undisputed that not all of the plaintiffs were represented by Fearnley & Califf. Second, any allegations against Fearnley & Califf sounding in legal malpractice necessarily rest upon alleged errors or omissions on the part of Ms. Kimbrow. The Complaint states that "Kimbrow and Fearnley Califf served as counsel for each of the Partnerships," and that Ms. Kimbrow was designated as an "authorized agent," who was to be "the primary contact for all business pertaining to the following developments: April Woods, Harmony Woods, Eagles Landing." It is axiomatic that, in order to charge Fearnley & Califf for legal malpractice for the acts or omissions of Ms. Kimbrow, there must first be claims of legal malpractice alleged against Ms. Kimbrow. The trial court, however, dismissed Ms. Kimbrow on the ground that the claims against her arise in tort and are only for unliquidated damages, which would negate the trial court's jurisdiction in this matter. Before reaching the question of whether the claims against Ms. Kimbrow sound in tort, we first address the issue of whether the complaint sufficiently alleges legal malpractice against any of the Appellees.

It is well settled that a plaintiff in a legal malpractice action has the burden of proving: (1) the employment of the attorney; (2) neglect by the attorney of a reasonable duty; and (3) damages resulting from the neglect. **Jamison v. Norman**, 771 S.W.2d 408 (Tenn.1989); **Sammons v. Rotroff**, 653 S.W.2d 740 (Tenn. Ct. App. 1983). The paramount requirement in a legal malpractice claim is the existence of an attorney-client relationship. In the instant case, the trial court determined that the causes of action sounded in legal malpractice despite the fact that several of the plaintiffs were not clients of Fearnley & Califf or Ms. Kimbrow:

> With respect to the Plaintiffs who were never clients of Fearnley & Califf [i.e., Fund XXVI, Fund XXX, Fund XXI, and Columbia Housing], the gravamen of those claims is still legal malpractice and such claims are time-barred by the same statute of limitation.

Because there was no attorney-client relationship between Fearnley & Califf and/or Ms. Kimbrow and Fund XXVI, Fund XXX, Fund XXI, and Columbia Housing, there can be no claim of legal malpractice *vis a vis* these particular plaintiffs.

From our review of the Complaint, we concede that many of the claims made against the Appellees and the corresponding factual allegations, do call into question whether Ms. Kimbrow complied with the applicable standard of professional care for attorneys in Tennessee. Specifically, these allegations include: (1) the allegations of errors concerning the drafting of the joint agreements (Paragraph 58), opinion letters (Paragraphs 86 through 88, and 253, 263, and 273), a quit claim deed (Paragraph 67), and closing instructions

-18-

(Paragraphs 89, 90, 255, 265, and 275); (2) breach of fiduciary duty in legal representation (Paragraphs 160, 179, 196, 254, 257, 264, 267, 274, and 277); (3) misrepresentations made during the course of legal representation (Paragraphs 254, 264, 274); and (4) any conflict of interest arising from Ms. Kimbrow's representation of both the partnerships and the general partner (Paragraph 83 and 160). Despite the trial court's conclusion that claims of legal malpractice only involved Fearnley & Califf, the foregoing pleadings were alleged not only against Fearnley & Califf, but also against Ms. Kimbrow, her PLLC, and Community Title.[6]

From our review of the Complaint, the allegations against Fearnley & Califf are premised upon the existence of some duty owed by the law firm to one or more of the plaintiffs. In each of the counts set out above, Appellants claim that Fearnley & Califf breached a duty and should be held responsible for actions undertaken, or not undertaken, in connection with the legal services provided by Ms. Kimbrow as a member of the firm. Specifically, Counts VII through IX are for "breach of duty." Here, Appellants allege that Fearnley & Califf somehow breached duties owed to the plaintiffs by knowing that misappropriations were happening, and doing nothing about it. A review of these allegations demonstrates that the only alleged duty that Fearnley & Califf is claimed to have breached involves the provision of legal services to one or more of Ms. Kimbrow's clients. Consequently, inquiry into these counts would involve the question of whether attorney Kimbrow's actions involved a breach of the standard of care. Likewise, to the extent that these claims would lie against Fearnley & Califf, they would also lie against Ms. Kimbrow in her professional capacity.

Although the trial court found that any claims sounding in legal malpractice are subject to the one-year statute of limitations found at Tennessee Code Annotated Section 28-3-104(a)(2), the court did not explain whether the statute of limitations question was raised by the parties', by the pleadings, or whether this finding was made *sua sponte*. In short, there is no indication that the trial court applied the discovery rule in this case. Consequently, this Court must do so now.

Under the discovery rule, a cause of action accrues when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant. ***Shadrick v. Coker***, 963 S.W.2d

---

[6] There is no attorney-client relationship between Community Title and the Appellants. Consequently, any causes of action against Community Title do not sound in legal malpractice. Moreover, even under the liberal Rule 8.01 standards and giving the Appellants all reasonable inferences, we cannot conclude that the complaint makes out any claim against Community Title for a breach of fiduciary duty sufficient to state a claim for professional malpractice against the title company. Rather, the claims against Community Title concern participation in and conspiracy to commit misappropriations and/or violations of the partnership agreements, discussed *infra*.

726, 733 (Tenn.1998); *Stanbury v. Bacardi*, 953 S.W.2d 671, 677 (Tenn.1997).

In legal malpractice cases, the discovery rule is composed of two distinct elements: (1) the plaintiff must suffer legally cognizable damage—an actual injury—as a result of the defendant's wrongful or negligent conduct, and (2) the plaintiff must have known or, in the exercise of reasonable diligence, should have known that this injury was caused by the defendant's wrongful or negligent conduct. *Carvell v. Bottoms*, 900 S.W.2d 23, 28–30 (Tenn. 1995). An actual injury occurs when there is the loss of a legal right, remedy or interest, or the imposition of a liability. *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528 (Tenn. 1998) (relying on *LaMure v. Peters*, 122 N.M. 367, 924 P.2d 1379, 1382 (1996)). An actual injury may also take the form of the plaintiff being forced to take some action or otherwise suffer "some actual inconvenience," such as incurring an expense, as a result of the defendant's negligent or wrongful act. *See State v. McClellan*, 113 Tenn. 616, 85 S.W. 267, 270 (1905) ("[A negligent act] may not inflict any immediate wrong on an individual, but . . . his right to a remedy . . . will [not] commence until he has suffered some actual inconvenience . . . . [I]t may be stated as an invariable rule that when the injury, however slight, is complete at the time of the act, the statutory period then commences, but, when the act is not legally injurious until certain consequences occur, the time commences to run from the consequential damage . . . ."). However, the injury element is not met if it is contingent upon a third party's actions or amounts to a mere possibility. *See Caledonia Leasing v. Armstrong, Allen*, 865 S.W.2d 10, 17 (Tenn. Ct. App. 1992).

The knowledge component of the discovery rule may be established by evidence of actual or constructive knowledge of the injury. *Carvell*, 900 S.W.2d at 29. Accordingly, the statute of limitations begins to run when the plaintiff has actual knowledge of the injury as where, for example, the defendant admits to having committed malpractice or the plaintiff is informed by another attorney of the malpractice. Under the theory of constructive knowledge, however, the statute may begin to run at an earlier date—whenever the plaintiff becomes aware or reasonably should have become aware of facts sufficient to put a reasonable person on notice that an injury has been sustained as a result of the defendant's negligent or wrongful conduct. *Id*. Our Supreme Court has stressed, however, that there is no requirement that the plaintiff actually know the specific type of legal claim he or she has, or that the injury constituted a breach of the appropriate legal standard. *Shadrick*, 963 S.W.2d at 733. Rather, "the plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct." *Carvell*, 900 S.W.2d at 29 (quoting *Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn.1994)). "It is knowledge of facts sufficient to put a plaintiff on notice that an injury has been sustained which is crucial." *Stanbury*, 953 S.W.2d at 678. A plaintiff may not, of course, delay filing suit until all the injurious effects or consequences of the alleged wrong are actually known to the plaintiff. *Shadrick*, 963 S.W.2d at 733; *Wyatt v.*

-20-

*A–Best Company*, 910 S.W.2d 851, 855 (Tenn.1995). Allowing suit to be filed once all the injurious effects and consequences are known would defeat the rationale for the existence of statutes of limitations, which is to avoid the uncertainties and burdens inherent in pursuing and defending stale claims. *Wyatt*, 910 S.W.2d at 855.

Applying these principles to the record before us, we conclude that, although Appellants' complaint clearly indicates that they had actual knowledge of Bluff City and/or Mr. Mabry's breaches and alleged misappropriations at the time Appellants removed Bluff City as general partner (i.e., August 12, 2008), we cannot, *ipso facto*, infer that Appellants' knowledge of breaches on the part of the general partner also indicate knowledge (constructive or actual) of breaches, misappropriations, and conspiracies on the part of the Appellee attorney, PLLC, and law firm. Although it is clear that any claims against the general partner would begin to run, at the latest, when the Appellants' removed Bluff City, the complaint does not assert that Appellants removal of Bluff City was premised, in any way, on knowledge that Bluff City was conspiring with these Appellees. In fact, from the complaint, it appears that Appellants did not seek any documents from Fearnley & Califf or Ms. Kimbrow until June 30, 2009, when Appellants issued a subpoena, seeking documents from Ms. Kimbrow. When adjudication is made on a motion to dismiss, we must give the plaintiff the benefit of any inference. *Trau–Med of Am., Inc. v. Allstate Ins.*, Co., 71 S.W.3d 691, 696–97 (Tenn. 2002) (citing *Pursell v. First Am. Nat'l Bank*, 937 S.W.2d 838, 840 (Tenn. 1996)). The original complaint, filed on August 13, 2008, does not list Fearnley & Califf, Ms. Kimbrow, or her PLLC as party-defendants. We have reviewed all of the attachments to this first complaint, and we find nothing therein from which to infer that Appellants' knowledge of any wrongdoing extended beyond that alleged against Bluff City. It was not until the first amended complaint, filed on November 12, 2009, that Ms. Kimbrow and Fearnley & Califf were added as defendants. Giving Appellants the benefit of any inferences, we may only properly infer at this stage of the litigation that it was not until sometime after the June 30, 2009 request for documents that Appellants obtained knowledge of the alleged legal malpractice on the part of Ms. Kimbrow and the firm.

Appellees contend that a review of the dates, on which the various transactions listed in the Complaint occurred, indicates knowledge of the law firm and Ms. Kimbrow's involvement in the wrongdoing. We disagree. Although the alleged property transfers, misappropriations, and unauthorized diversion of funds all happened more than one year before November 12, 2009, knowledge of these misappropriations and other breaches does not, necessarily, indicate knowledge of any wrongdoing on the part of the law firm or Ms. Kimbrow, although it does indicate knowledge of Bluff City's wrongdoing. From the complaint and all attachments made thereto, we can only infer that Appellants gained knowledge of wrongdoing on the part of Ms. Kimbrow and the law firm sometime after June 30, 2009. Consequently, the statute of limitations for legal malpractice does not commence

running until, at the earliest, June 30, 2009. Therefore, the November 12, 2009 first amended complaint was timely filed against Ms. Kimbrow, Fearnley & Califf, and the PLLC . The second amended complaint, filed on July 20, 2010, should be treated as relating back to the first amended complaint (i.e., November 12, 2009). To the extent that Appellants have pled causes of action for legal malpractice against Ms. Kimbrow, Fearnley & Califf, and the PLLC, these causes of action did not accrue until sometime after June 30, 2009. As a result, the filing of the November 12, 2009 amended complaint, adding these Appellees, was timely for purposes of the motion to dismiss.

Having determined that the legal malpractice causes of action against Ms. Kimbrow, Fearnley & Califf, and the PLLC survive the motion to dismiss, our inquiry does not end with that determination. As succinctly pointed out by the Georgia Court of Appeals, in *Crosby v. Pittman*, 700 S.E.2d 629 (Ga. Ct. App. 2010), not every cause of action against a lawyer sounds in malpractice:

> [N]ot every claim which calls into question the conduct of one who happens to be a lawyer. . . is a professional malpractice claim . . . . It is only where the claim is based upon the failure of the professional to meet the requisite standards of the subject profession that [a claim for malpractice lies]. . . . Thus, we have repeatedly held that complaints asserting claims for intentional misconduct against a professional, including fraud and misrepresentation, do not require the inclusion of an expert affidavit [because they do not sound in legal malpractice]. . . . Additionally, claims for breach of fiduciary duty do not require an expert affidavit as they are not based on negligence involving the performance of the professional's services.

*Id*. at 640–41 (footnotes and internal citations omitted). Consequently, in addition to the claims for legal malpractice against Fearnley & Califf, Ms. Kimbrow, and Tate & Kimbrow, to the extent that the Appellants' complaint makes out any causes of action sounding in tort, against these Appellees or Community Title, these claims may also survive dismissal under Tennessee Rule of Civil Procedure 12.02(6). We now turn to address that question.

## II. Fraudulent Torts

The concept of fraud encompasses many causes of action in Tennessee. As Justice Cardozo noted, "[t]he phases of fraud are manifold." *Sleicher v. Sleicher*, 251 N.Y. 366, 167 N.E. 501, 503 (N.Y.1929). Perhaps this is why claims involving allegations of fraud require more than the general pleading requirement of a "short and plain statement of the claim."

Tenn. R. Civ. P. 8.01.  Rather, Tennessee Rule of Civil Procedure 9.02 requires that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity," while "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally."Tennessee Rule of Civil Procedure 9.02 requires "particularity." "Particularity," or the "quality or state of being particular," *Id*. at 732, connotes a "concern[] with details, [or] minut[ia]." *Id*. The particularity requirement means that any averments sounding in fraud (and the circumstances constituting that fraud) must "relat[e] to or designat[e] one thing singled out among many." *Id*.  In other words, particularity in pleadings requires singularity–of or pertaining to a single or specific person, thing, group, class, occasion, etc., rather than to others or all. *Id*.

We reiterate the fact that the trial court dismissed Appellants' lawsuit against Ms. Kimbrow, Tate & Kimbrow, PLLC, and the Title Company on grounds that those claims sound[] in tort and are for unliquidated damages.  Throughout these proceedings, up to and including at oral argument before this Court, Appellants have had difficulty articulating the exact claims that are allegedly set out in the Complaint.  From our review of the Complaint, we understand the difficulty.  As discussed above, if a complaint makes out a cause of action despite what that action may be labeled, the complaint should not be dismissed on a Tennessee Rule of Civil Procedure 12.02(6) motion.  Giving Appellants the benefit of all reasonable inferences that may logically be drawn from these pleadings, it appears that, in addition to the time-barred legal malpractice claims, the Complaint attempts to plead four torts: (1) negligent and/or intentional misrepresentation; (2)  fraudulent concealment; (3) aiding and abetting breach of fiduciary duty; and (4) conversion (a/k/a misappropriation or civil theft).  There are also allegations of a conspiracy on the part of Appellees to effectuate certain breaches or misappropriations.  To the extent that these torts sound in fraud, we will require particularity in the pleadings pursuant to Tennessee Rule of Civil Procedure 9.02. We now turn to address each of these causes of action against the Complaint to determine whether Appellants have sufficiently pled any of these torts against any of the Appellees.

### A.  Misrepresentations

This court has noted that there is not a separate cause of action for intentional misrepresentation in Tennessee. *Fairway Village Condo. Assoc., Inc. v. Conn. Mutual Life Ins. Co.*, 934 S.W.2d 342, 347 (Tenn. Ct. App. 1996). Rather, intentional misrepresentation is an element of fraud. *Id*. However, "the two are often used interchangeably in common parlance." *Id*.; *see also Parks v. Fin. Fed. Sav. Bank*, 345 F. Supp. 2d 889, 895 (W.D. Tenn. 2004) (noting that "under Tennessee law, there is not a separate cause of action for intentional misrepresentation" and that "intentional misrepresentation is an element of a cause of action for fraud rather than an independent cause of action"); *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 904 n. 1 (Tenn. 1999) (stating that the terms "intentional

-23-

misrepresentation," "fraudulent misrepresentation," and "fraud" are synonymous).

In the Complaint, as set out in full context above, Appellants allege that "[t]here was a knowing, intentional representation of fact [by the Appellees] as to the enforceability [of the three partnership agreements]." (Paragraphs 256, 266, and 276). Furthermore, the Complaint avers that Appellees "made continued representations about the financial status and condition of the project[s] without disclosing the misappropriations. . . ." (Paragraphs 162, 180, 197). In these pleadings, it appears that the Appellants rely on the definition of fraud set forth in *Kincaid v. South Trust Bank*, 221 S.W.3d 32, 40 (Tenn. Ct. App. 2006), which requires an intentional misrepresentation.

In order to establish a claim for fraudulent or intentional misrepresentation, a plaintiff must show the following: (1) the defendant made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the misrepresented fact; and (6) plaintiff suffered damage as a result of the misrepresentation. *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008). The party alleging fraud bears the burden of proving each element. *Hiller v. Hailey*, 915 S.W.2d 800, 803 (Tenn. Ct. App. 1995) (quoting *Williams v. Spinks*, 7 Tenn. App. 488 (1928)).

In addition to those allegations above, at Paragraphs 258, 268, and 278, Appellants claim that Kimbrow, Fearnley & Califf, and Community Title are "also liable for negligent misrepresentation" because "[t]he statements as to the enforceability [of the partnership contracts] were made. . . without exercising reasonable care in obtaining or communicating the information. . . ." In *Robinson v. Omer*, 952 S.W.2d 423 (Tenn.1997), our Supreme Court discussed the essential elements of a negligent misrepresentation claim:

> Tennessee has adopted Section 552 of the Restatement (Second) of Torts "as the guiding principle in negligent misrepresentation actions against other professionals and business persons." *Bethlehem Steel Corp. v. Ernst & Whinney*, 822 S.W.2d 592, 595 (Tenn.1991). Section 552 provides, in pertinent part, as follows:
>
> > (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to

-24-

liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction. Restatement (Second) of Torts, § 552 (1977).

*Robinson v. Omer*, 952 S.W.2d at 427. In discussing the requirements for recovery under Section 552, this Court has stated that liability in tort will result, despite the lack of contractual privity between the plaintiff and defendant, when:

(1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; and
(2) the defendant supplies faulty information meant to guide others in their business transactions; and
(3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and
(4) the plaintiff justifiably relies upon the information.

*John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 431 (Tenn.1991); *accord* *Ritter v. Custom Chemicides, Inc.*, 912 S .W.2d 128, 130 (Tenn. 1995); *Robinson v. Omer*, 952 S.W.2d at 427.

Consequently, the difference between fraudulent (i.e., intentional) and negligent misrepresentation is that, in addition to the four *prima facie* requirements for negligent misrepresentation, fraudulent misrepresentation requires a fifth element, which is that "the false representation [must be made] either knowingly or without belief in its truth or

recklessly [with regard to its truth]." ***Metropolitan Gov't v. McKinney***, 852 S.W.2d 233, 237 (Tenn. Ct . App. 1992); *see also* Restatement (Second) of Torts § 525 (1977). "[A] person acts fraudulently when (1) the person intentionally misrepresents an existing, material fact or produces a false impression, in order to mislead another or to obtain an undue advantage, and (2) another is injured because of reasonable reliance upon that representation." ***Hodges v. S.C. Toof & Co.***, 833 S.W.2d 896, 901 (Tenn., 1992).

In order to establish a claim for either fraudulent or negligent misrepresentation, Appellants must first show that an existing or past fact was misrepresented. The exact misrepresentation(s) in this case are difficult to discern from the Complaint. While Appellants state that there were misrepresentations concerning the enforceability of partnership contracts and concerning the financial status and condition of the projects, the particular misrepresentations are not elucidated in the Complaint. Because the particular misrepresentations are not specifically set out in the complaint, it is also difficult (if not impossible) to determine which of the Appellees should be charged with these utterances. In short, without information as to what representations were made and by whom, these pleadings are vague and do not satisfy the liberal pleading requirements of Tennessee Rule of Civil Procedure 8.01 (for negligent misrepresentations), much less the heightened requirements of Tennessee Rule of Civil Procedure 9.02 (for intentional or fraudulent misrepresentations).

## B. Fraudulent Concealment

In addition to the allegations of misrepresentation, at Paragraphs 267, 277, and 287, Appellant's state that the Appellees "would also be liable for fraud due to a failure to disclose material facts [concerning the enforceability of the partnership agreements], despite a duty to make such disclosure."

In ***Shadrick v. Coker***, 963 S.W.2d 726 (Tenn. 1998), our Supreme Court explained:

> Fiduciary relationship, confidential relationship, constructive fraud and fraudulent concealment are all parts of the same concept. [T]he nature of the relationship which creates a duty to disclose, and a breach of [that] duty constitutes constructive fraud or fraudulent concealment, springs from the confidence and trust reposed by one in another, who by reason of a specific skill, knowledge, training, judgment or expertise, is in a superior position to advise or act on behalf of the party bestowing trust and confidence in him. Once the relationship exists 'there exists a duty to speak . . . [and] mere silence constitutes fraudulent

concealment.'

*Id*. at 736 (citing ***Garcia v. Presbyterian Hospital Ctr***., 92 N.M. 652, 593 P.2d 487, 489—90 (1979)).

This Court recognizes two actionable types of concealment: where the concealment constitutes a trick or contrivance and when there is a duty to disclose. ***Cont'l Land Co. v. Inv. Props. Co.***, No. M1998–00431–COA–R3–CV, 1999 WL 1129025, at *5–6 (Tenn. Ct. App.1999). Generally, to find fraud by concealment or suppression of the truth there must be a showing of something more than mere silence, or a mere failure to disclose known facts. This Court has described the nature of fraudulent concealment as:

> Concealment in this sense may consist in withholding information asked for, or in making use of some device to mislead, thus involving act and intention. The term generally infers that the person is in some way called upon to make a disclosure. It may be said, therefore, that, in addition to a failure to disclose known facts, there must be some trick or contrivance intended to exclude suspicion and prevent inquiry, or else there must be a legal or equitable duty on the party knowing such facts to disclose them.

***Cont'l Land Co. v. Inv. Props. Co.***, No. M1998–00431–COA–R3–CV, 1999 WL 1129025, at *5–6 (Tenn. Ct. App.1999) (citing ***Hall v. DeSaussure***, 41 Tenn. App. 572, 297 S.W.2d 81, 87 (1956)).

A party commits fraudulent concealment for failing to disclose a known fact or condition where he or she had a duty to disclose and another party reasonably relies upon the resulting misrepresentation, thereby suffering injury. ***Chrisman v. Hill Home Dev., Inc.***, 978 S.W.2d 535, 539 (Tenn. 1998). For the nondisclosure to constitute fraud, the charged party must have knowledge of an existing fact or condition and a duty to disclose that fact or condition. ***Lonning v. Jim Walter Homes, Inc.***, 725 S.W.2d 682, 685 (Tenn. Ct. App. 1986). The fact or condition must be a material fact. *Id*. (citing ***Simmons v. Evans***, 185 Tenn. 282, 206 S.W.2d 295, 296 (1947)). Quoting the Restatement (Second) of Torts Section 538, we have opined that a fact is material if: (a) a reasonable [person] would attach importance to its existence or nonexistence in determining his [or her] choice of action in the transaction in question; or (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his [or her] choice of action, although a reasonable [person] would not so regard it. ***Patel v. Bayliff***, 121

S.W.3d 347, 353 (Tenn. Ct. App. 2003) (quoting *Lowe v. Gulf Coast Dev., Inc.*, No. 01A01–9010–CH–00374, 1991 WL 220576, at *8 (Tenn. Ct. App. 1991)). Although there may be a duty to disclose material facts, a party does not have a duty to disclose a material fact where ordinary diligence would have revealed the undisclosed fact. *Simmons*, 206 S.W.2d at 296; *Lonning,* 725 S.W.2d at 684. "A party cannot be permitted to claim that he has been taken advantage of if he had the means of acquiring the needed information or if, because of his business experience or his prior dealings with the other party, he should have acquired further information before he acted." *Macon County Livestock Mkt., Inc. v. Kentucky State Bank, Inc.*, 724 S.W.2d 343, 351 (Tenn. Ct. App. 1986). In addition, a plaintiff's damages must have been caused by his reasonable reliance on the nondisclosure, i.e., the plaintiff was not aware of the material fact and would have acted differently if the plaintiff knew of the concealed or suppressed fact. *See Simmons*, 206 S.W.2d at 297; *Body Invest, LLC v. Cone Solvents, Inc.*, No. M2006–01723–COA–R3–CV, 2007 WL 2198230, at *6 (Tenn. Ct. App. 2007). A plaintiff is not required to demonstrate an "intent to deceive" to establish a claim for fraudulent concealment. *See Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 39–40 (Tenn. Ct. App. 2006) ("Constructive fraud is a breach of a legal or equitable duty which is deemed fraudulent because of its tendency to deceive others ... [n]either actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud."); *Pitz v. Woodruff*, No. M2003–01849–COA–R3–CV, 2004 WL 2951979, at *8 (Tenn. Ct. App. 2004); *Edmondson v. Coates*, No. 01A01–9109–CH–00324, 1992 WL 108717, at *9–11 (Tenn. Ct. App. 1992); *Lonning v. Jim Walter Homes, Inc.*, 725 S.W.2d 682, 684 (Tenn. Ct. App. 1986).

As was the case with the alleged misrepresentations, in the absence of more specific pleadings concerning the substance of those facts that were allegedly concealed by the Appellees, it is difficult (if not impossible) to determine whether these allegedly concealed facts were material. Furthermore, although Appellants' Complaint avers numerous "fiduciary or other duties" on the part of Appellees, it is not clear why such duty would be imposed except under an attorney-client relationship (e.g., there are no contracts between these parties, and no other basis for privity that we can infer from the pleadings). In short, the allegations that Ms. Kimbrow, Fearnley & Califf and/or Community Title owed a duty to any of the plaintiffs in this case is not established in these pleadings, except the fiduciary relationship of an attorney to his or her client. The question of whether Ms. Kimbrow or Fearnley & Califf breached a fiduciary duty in representing some of the Appellants would, necessarily, require inquiry into whether professional standards were followed; as such, these alleged "breaches of fiduciary or other dut[ies]" would lie in legal malpractice.

Fraudulent concealment may also be shown without the existence of a duty where the concealment constitutes a trick or contrivance. Again, Appellants make conclusory allegations against all defendants, stating that they "aided and abetted in, benefitted from,

participated in, conspired with, assisted and encouraged [the alleged breaches]. . . ," or "gave substantial assistance and encouragement to the other [Appellees]." Because this tort sounds in fraud, the particularity requirement of Tennessee Rule of Civil Procedure 9.02 is triggered; thus, the allegations giving rise to an inference of trickery or contrivance on the part of Appellees must be pled with particularity. From our review of the Complaint, particular facts giving rise to the Appellees' alleged participation, assistance, encouragement, aid, etc. are simply not averred. Under Rule 9.02, conclusory statements are not sufficient to make out a cause of action sounding in fraud. Because only conclusory statements, such as those listed above, are pled in this Complaint, we conclude that the Appellants' have failed to make out a cause of action for fraudulent concealment as to any Appellee. Having determined that the Complaint fails to state a claim for fraudulent concealment as to any of the Appellees, any argument that fraudulent concealment somehow tolled the running of the statute of limitations on the legal malpractice claims is, likewise, without merit.

### C.  Aiding and Abetting a Breach of Fiduciary Duty

Appellants argue that the Complaint makes out a cause of action against Appellees based upon the alleged fact that the Appellees "aided and abetted" each other in the commission of these "breaches of fiduciary duty." At various places in the Complaint, Appellants state that Appellees "aided and abetted in . . . [the alleged breaches] . . . ," or "gave substantial assistance and encouragement to the other [Appellees]." This alleged cause of action, if stated, would be based on the common law civil liability theory of aiding and abetting, which requires that "the defendant knew that his companions' conduct constituted a breach of duty, and that he gave substantial assistance or encouragement to them in their acts." *Carr v. United Parcel Service*, 955 S.W.2d 832, 836 (Tenn.1997) (quoting *Cecil v. Hardin*, 575 S.W.2d 268 (Tenn.1978)). As stated in the Restatement of Torts §876 (1934 & 2004 Supp.):

> For harm resulting to a third person from the tortious conduct of another, a person is liable if he:
>
> (a) orders or induces such conduct, knowing of the conditions under which the act is done or intending the consequences which ensue, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a

tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

To plead this tort, there must be an allegation of "substantial" assistance on the part of the alleged tortfeasor. Turning to the Complaint, the Appellants pled generally that:

> Each of the other Defendants aided and abetted in, benefitted from, participated in, conspired with, assisted and encouraged Bluff City's breaches, and are therefore likewise responsible.

This statement, alone, is too vague to satisfy the requirements of Tennessee Rule of Civil Procedure 8.01, and does not demonstrate "substantial" assistance, on the part of Appellees, in any tort. However, we must read this allegation in the context of the entire complaint. In the following paragraphs, Appellants aver specific acts against Fearnley & Califf, Kimbrow, her PLLC, and Community Title that were allegedly committed in furtherance of Bluff City's breach of fiduciary duty:

> 58. These Joint Use Agreements were prepared by Kimbrow, Fearnley Califf and/or Community Title. Kimbrow, Fearnley Califf, Community Title and April Woods II each knew or should have known that prior written consent was required and that the agreements violated the April Woods Partnership Agreement.

> 67. This quit claim deed was prepared by Kimbrow, Fearnley Califf and/or Community Title, and was notarized by Kimbrow. Kimbrow, Fearnley Califf and Community Title each knew or should have known that prior written consent was required and that the transfer violated the Eagles Landing Partnership Agreement.

Giving Appellants the required benefit of any reasonable inference, we conclude that the inclusion of these specific acts in the complaint supports an inference that these documents were prepared, with knowledge of their conflict with the partnership agreements, in order to aid and abet Bluff City's breach of those partnership agreements. Consequently, this alleged tort survives the motion to dismiss.

## D. Conversion a/k/a Trover, Misappropriation or Civil Theft

Conversion is the appropriation of tangible property to a party's own use in exclusion

or defiance of the owner's rights. ***Barger v. Webb***, 391 S.W.2d 664, 665 (Tenn. 1965); ***Lance Prods., Inc. v. Commerce Union Bank***, 764 S.W.2d 207, 211 (Tenn. Ct. App. 1988). Conversion is an intentional tort, and a party seeking to make out a *prima facie* case of conversion must prove: (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights. ***Kinnard v. Shoney's, Inc.***, 100 F. Supp. 2d 781, 797 (M.D. Tenn. 2000); ***Mammoth Cave Prod. Credit Ass'n v. Oldham***, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977). Property may be converted in three ways. First, a person may personally dispossess another of tangible personalty. Restatement (Second) of Torts § 223(a) (1965). Second, a person may dispossess another of tangible property through the active use of an agent. *See, e.g., **McCall v. Owens***, 820 S.W.2d 748, 751 (Tenn. Ct. App. 1991). Third, under certain circumstances, a person who played no direct part in dispossessing another of property, may nevertheless be liable for conversion for "receiving a chattel." Restatement (Second) of Torts § 223(d).

As noted in 90 C.J.S. Trover and Conversion § 16 (2012):

> Although there is authority to the contrary, the general rule is that money is an intangible and therefore not subject to a claim for conversion. However, there is an exception where the money is specific and capable of identification or where there is a determinate sum that the defendant was entrusted to apply to a certain purpose. Identifiable funds are deemed a chattel for purposes of conversion, and conversion may be established where a party shows ownership or the right to possess specific, identifiable money. Trover will lie whenever the plaintiff's money has come into the defendant's possession and has been converted without the plaintiff's express or implied assent that the relation of debtor and creditor should arise. For money to be a subject of conversion, it need not be specifically earmarked. Moreover, specific coins or bills need not be identified, nor is it necessary to identify the specific dollars and coins represented by the face value of checks and other negotiable instruments. Conversion of checks is actionable because checks designate specific amounts of money for use for specific purposes.
>
> Trover lies for the conversion of determinate sums, such as tax receipts or insurance premiums, where there is an obligation to keep the money intact or to deliver it. There can be, however, no conversion of money unless there was an obligation on the part of the defendant to deliver specific money to the plaintiff or unless the money was wrongfully received by

the defendant. Trover does not lie to enforce a mere obligation to pay money or for money had and received for payment of a debt. On the other hand, where the defendant is under an obligation to deliver specific money to the plaintiff and fails or refuses to do so, or when wrongful possession of it has been obtained by the defendant, there is a conversion for which trover lies. Misappropriated funds placed in the custody of another for a definite purpose may be subject to a suit for conversion.

*Id*. (footnotes omitted).

As further discussed in 90 C.J.S. <u>Trover and Conversion</u> § 88 (2012):

It has been said that to establish conversion, one must present proof of a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a wrongful detention or interference with another's property.

In order to establish conversion, the plaintiff must allege and prove facts showing a right to immediate possession of the property at the time of conversion. The plaintiff must also prove the commission of such acts by the defendant with respect to the allegedly converted property as amount to a repudiation of the plaintiff's title or an exercise of dominion over the property. Where two or more persons are sued jointly for a conversion, a joint conversion must be proved.

Proof of a demand and refusal is not essential to recovery if a conversion is otherwise shown, as where the defendant denies the plaintiff's title and sets up ownership and a right of possession, or where an unlawful taking is established. Where the circumstances do not amount to an actual conversion, however, the plaintiff must show a demand and refusal prior to the commencement of the action and that the defendant had the power to give up the property.

Where it is shown that the defendant converted the property to the defendant's own use, it is not necessary to prove that the taking was tortious.[7] It is unnecessary to prove

_____

[7] As discussed by Bryan A. Garner, in <u>A Dictionary of Modern Legal Usage</u> 885 (2d. ed. 1995), the term "tortious" has two meaning: (1) of or relating to tort, and (2) constituting a tort, i.e., tortious actions that
(continued...)

conversion where the defendant is in possession of the property, unless the defendant's possession was lawfully acquired. A wrongful intent on the part of the defendant is not an element of conversion and, therefore, need not be proved. Proof that the conversion took place on the date alleged in the declaration is also unnecessary.

*Id*. (original footnotes omitted; internal footnote 5 added).

We begin our analysis with those allegations of misappropriation or conversion made in the Complaint against Appellees Fearnley & Califf and Community Title, which we conclude are general averments that fail to satisfy the particularity requirement of Tennessee Rule of Civil Procedure 9.02. Numerous times throughout the Complaint, Appellants state that "each of the Defendants knew that the funds were being misappropriated and that the partnership funds were not being used for a proper partnership obligation." These averments, however, do not support a claim for actual misappropriation on the part of any of the Appellees. Rather, the only reasonable inference is that the defendants knew about the alleged misappropriations, but did nothing to stop them. As discussed above, withholding information (or failure to speak) would constitute a claim for fraudulent concealment, but, because of the lack of particularity, these general statements are not sufficient to state that claim. Likewise, the statement that "[e]ach of the Defendants aided and abetted in, benefitted from, participated in, conspired with, assisted and encouraged [the breaches]" is too vague to state a claim for misappropriation.

To state a cause for misappropriation or conversion, under Tennessee Rule of Civil Procedure 9.02, Appellants would need to plead all acts of misappropriation with particularity. At Paragraph 139 of the Complaint, Appellants aver that "[o]n information and belief, **on other occasions**, Mabry and/or Bluff City, **or other Defendants**, caused cash to be withdrawn from **one or more** of the Partnerships' account. . . ." (Emphasis added). Again, Rule 9.02 requires particularity—i.e., singularity—of or pertaining to a single or specific person, thing, group, class, occasion, etc., rather than to others or all. Here, Appellants refer to "all other Defendants," and assert that these defendants "caused cash to be withdrawn from **one or more** of the partnership accounts." "One or more" is not a single thing. Furthermore, the phrases "all other defendants" and "on other occasions" are neither

---

[7](...continued)
are also criminally punishable. As pointed out by Mr. Garner, the second meaning is the most common usage, and that is the sense in which it is used here. Because the Complaint states that the allegedly misappropriated funds were taken for the benefit of the Appellees, Appellants do not have to prove that the taking could be punishable as an embezzlement or larceny under the criminal law.

singular, nor particular. Under Rule 9.02, these pleadings do not satisfy the particularity requirements for pleadings sounding in fraud.

We next review those allegations of misappropriation or conversion made specifically against Ms. Kimbrow, which are located at Paragraphs 102 and 103 of the Complaint. In Paragraph 102, Appellants state that "[o]n November 30, 2007," funds, in the amount of "of $347,265.67," were withdrawn from the April Woods Partnership account by Mr. Mabry or Bluff City, and that these funds were "used to purchase a Cashier's Check (number 413187971)." The paragraph goes on to state that, although partnership funds were used to purchase a cashier's check, "[t]his cashier's check was made payable to Oakland Deposit Bank," with a notation that it was "For: Vanecia Kimbrow Loan Payoff." We have determined that Paragraphs 102 and 103 contain sufficient particularity. Unlike the averments discussed above (e.g., Paragraph 139), in Paragraphs 102 and 103, Appellants give the date of the alleged misappropriation, the amount, and the number of the cashier's check that was allegedly purchased with the converted funds. In addition, at Paragraph 103, Appellants state that these funds were used to make payment on "loans on which Kimbrow, or an affiliate of Kimbrow, was the borrower or guarantor, and/or were deposited into accounts held in the name of Kimbrow." Appellants list these alleged accounts with particularity: "These [loans or accounts allegedly held by Ms. Kimbrow] end[] in -4060, -81761, -81751, -81750, -01750 . . ., -1762. . . [and] -81701." As opposed to the foregoing pleadings against "other defendants" for some alleged withdrawal of some amount of cash from some partnership fund, Paragraphs 102 and 103 list the particular partnership fund from which the funds were allegedly misappropriated, list the exact amount of the misappropriation, list the actual number of the cashier's check that was purchased, and list the numbers of the accounts into which the misappropriated funds were allegedly placed. We conclude that these Paragraphs are sufficiently particular, under Tennessee Rule of Civil Procedure 9.02, to state a cause of action against Ms. Kimbrow, only. The allegations contained in Paragraphs 102 and 103 also aver that the misappropriated funds were used for the benefit of Ms. Kimbrow to pay loans held in her name. Although, as noted above, conversion will not ordinarily lie for misappropriation of money, here, the exact amount of the misappropriated funds is pled. Consequently, we conclude that the Appellants may maintain a cause of action for misappropriation or conversion against Ms. Kimbrow alone, in her individual capacity (as opposed to in her professional capacity, which claims would sound in legal malpractice, *see* discussion *supra*). Conversion is subject to the three-year statute of limitations set out at Tennessee Code Annotated Section 28-3-105, and is not time-barred under the facts pled here.

### III. Civil Conspiracy or Joint Liability

The complaint contains numerous allegations that the defendants somehow conspired

concerning the alleged breaches and/or misappropriations: "Each of the other Defendants conspired and acted in concert or pursuant to a common design in connection with the misappropriations of partnership funds and property. Alternatively, each gave substantial assistance and encouragement to the other." As stated above, the majority of these allegations are too vague and general to satisfy even the less stringent pleading requirements of Tennessee Rule of Civil Procedure 8.01. Civil conspiracy claims must be pled with some degree of specificity in order to survive a motion to dismiss; conclusory allegations unsupported by material facts will not be sufficient to state a claim. *McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002); *see also O'Dell v. O'Dell,* 303 S.W.3d 694, 697 (Tenn. Ct. App. 2008).

The elements necessary to establish a claim for civil conspiracy are: "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." *Kincaid*, 221 S.W.3d at 38. In addition, a claim for civil conspiracy "requires an underlying predicate tort allegedly committed pursuant to the conspiracy." *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007). Conspiracy, standing alone, is not actionable where the underlying tort is not actionable. *Id*. at 179–80.

As discussed above the claims against, Fearnley & Califf, Ms. Kimbrow, Tate & Kimbrow, and Community Title for the alleged tort of aiding and abetting the breach of Bluff City's fiduciary duty survived the motion to dismiss. The pleadings specifically state that "each of the other Defendants aided and abetted in, benefitted from, participated in, conspired with, assisted and encouraged Bluff City's breaches." Giving Appellants the benefit of any reasonable inference, we conclude that, to the extent that Appellants can show that Ms. Kimbrow, Fearnley & Califf, Tate & Kimbrow, and/or Community Title aided and abetted Bluff City's breaches, a claim of conspiracy to commit that tort may also survive the motion to dismiss.

Likewise, concerning our conclusion that Ms. Kimbrow may also stand, individually, for the tort of misappropriation or conversion, we conclude that the conspiracy allegations against Ms. Kimbrow may also stand as they relate to the misappropriation of $347,265.67 in April Woods Partnership funds. Appellants have averred that Mabry and Bluff City withdrew these sums and paid them to the benefit of accounts held or owed by Ms. Kimbrow. Moreover, Appellants aver that Ms. Kimbrow knew that the funds were being misappropriated. Two or more persons may be held jointly and severally liable when they intentionally unite in the wrongful act causing the injury, *Hale v. Knoxville*, 226 S.W.2d 265, 269 (Tenn.1949), and it may be imposed on all who actively participate in the tortious acts, who intentionally aid the acts, or who ratify tortious acts done for their benefit. *Hux v.*

*Butler*, 339 F.2d 696, 699 (6th Cir. 1964). In appropriate circumstances, joint and several liability is appropriate for conversion claims. *See, e.g., Breeden v. Elliott Bros*., 118 S.W.2d 219, 220 (Tenn. 1938). While these pleadings are not the model of clarity, we may reasonably infer that Ms. Kimbrow is alleged to have been part and party to the plan to misappropriate these particular funds (i.e., $347,265.67) to her own benefit, with the aid and assistance of Mabry and/or Bluff City.[8]

## IV. Unliquidated Damages

Concerning the lawsuit against Ms. Kimbrow, the trial court held that any claims asserted against her arise in tort and seek unliquidated damages. The Court, therefore, found that it lacked subject matter jurisdiction to hear Appellants' claims against Ms. Kimbrow, and dismissed the claims without prejudice.

Tennessee Code Annotated Section 16-11-102 provides:

> (a) The chancery court has concurrent jurisdiction, with the circuit court, of all civil causes of action, triable in the circuit court, except for unliquidated damages for injuries to person or character, and except for unliquidated damages for injuries to property not resulting from a breach of oral or written contract; and no demurrer for want of jurisdiction of the cause of action shall be sustained in the chancery court, except in the cases excepted.
>
> (b) Any suit in the nature of the cases excepted in subsection (a)

---

[8] Although we hold that the Appellants' claim against Ms. Kimbrow for civil conspiracy to commit conversion survives the motion to dismiss, we cannot conclude that the complaint likewise makes out a sufficient claim against Fearnley & Califf, Tate & Kimbrow, or Community Title for civil conspiracy to commit conversion. In the factual allegations regarding Ms. Kimbrow's alleged conversion, the complaint merely states that "Fearnley Califf and Community Title knew that the funds were being misappropriated and that the partnership funds were not being used for a proper partnership obligation." Accordingly, the complaint does not allege that there was a common design between the Appellees to commit conversion. While the complaint also states the general allegation that "[e]ach of the other Defendants conspired and acted in concert," the complaint offers no other allegations regarding the participation of Fearnley & Califf, Tate & Kimbrow, or Community Title in Ms. Kimbrow's alleged conspiracy. Accordingly, the claims against Fearnley & Califf, Tate & Kimbrow, and Community Title for civil conspiracy to commit conversion do not meet the requirements of Rule 8.01 of the Tennessee Rules of Civil Procedure because the claims do not "contain sufficient factual allegations to articulate a claim for relief . . . beyond the speculative level." *Abshure v. Methodist Healthcare-Memphis Hosps.*, 25 S.W.3d 98, 104 (Tenn. 2010).

brought in the chancery court, where objection has not been taken by a plea to the jurisdiction, may be transferred to the circuit court of the county, or heard and determined by the chancery court upon the principles of a court of law.

We first note that, pursuant to the statute, the proper procedure, upon a correct finding that the damages sought are unliquidated, would be transfer to the circuit court, not dismissal. However, here the only sufficiently pled claims are against Ms. Kimbrow for misappropriation or conversion and conspiracy to commit those acts. "Unliquidated damages" are those damages "that have not been previously specified or contractually provided for." Bryan A. Garner, A Dictionary of Modern Legal Usage 902 (2d. ed. 1995). As explained in 22 Am. Jur. 2d Damages § 465 (2012):

Whether the amount involved qualifies as "liquidated" is not always clear, but in general, "liquidated" means "made certain or fixed by agreement of the parties or by operation of law." On the other hand, "unliquidated damages" are damages that have not been determined or calculated, or not yet reduced to a certainty in respect to amount.

It has been held that a bona fide dispute as to the amount of a claim is not a bar to the recovery of interest under this rule, but it has also been held that such a dispute does bar recovery of interest as of right.

A liquidated claim exists if the plaintiff has made a demand for a specific sum that the defendant allegedly unlawfully retained, because such a claim is certain and known to the defendant before the suit is filed. A claim that was for a fixed amount that had become due and payable on a set date is also liquidated, even though the verdict for the plaintiff turns out to be less than the figure demanded, as this fact does not necessarily convert a claim for an otherwise liquidated amount into a claim for an uncertain and therefore unliquidated amount.

*Id*. (footnotes omitted).

Only the claim for conversion and conspiracy against Ms. Kimbrow survives the Tennessee Rule of Civil Procedure 12.02 motion. However, as set out in Paragraphs 102 and 103, the exact amount of the alleged misappropriation (i.e., $347,265.67) is averred in this case. We conclude, therefore, that the damages sought in this instance are not unliquidated. As such, the chancery court has jurisdiction over this matter. "[W]here the chancery court

-37-

has obtained jurisdiction over some portion of or feature of a controversy it may grant full relief in the same manner as could a court of law." ***Pruitt v. Talentino***, 464 S.W.2d 294, 296 (Tenn. Ct. App. 1970); *accord*, ***Industrial Dev. Bd. v. Hancock***, 901 S.W.2d 382, 384 (Tenn. Ct. App. 1995) ("When a court of chancery takes jurisdiction of a case under its inherent jurisdiction it may decide all issues involved in the matter in order to prevent a multiplicity of actions."). Consequently, to the extent that the damages sought (above the $347,265.67) may be unliquidated, having taken jurisdiction over the liquidated portion of the damages, the chancery court may fully adjudicate the matter.

For the foregoing reasons, we: (1) reverse the trial court's dismissal of claims of legal malpractice against Ms. Kimbrow, Fearnley & Califf, and Tate & Kimbrow, PLLC because this cause of action is not time-barred under the discovery rule (there is no cause of action for legal malpractice against Community Title because there is no attorney-client relationship); (2) reverse the trial court's dismissal of the cause of action for aiding and abetting a breach of Bluff City's fiduciary duty and conspiracy to commit same against all Appellees; (3) reverse the trial court's dismissal of causes of action for misappropriation or conversion and conspiracy to commit same against Vanecia Kimbrow; individually; and (4) affirm the dismissal of all other claims against the Appellees for failure to sufficiently plead. We remand this case for such further proceedings as may be necessary and consistent with this Opinion. Costs of this appeal are assessed one half to the Appellants, PNC Multifamily Capital Institutional Fund XXVI Limited Partnership, PNC Multifamily Capital Institutional Fund XXX Limited Partnership, PNC Multifamily Capital Institutional Fund XXI Limited Partnership (Fund XXI"), Columbia Housing SLP Corporation, Eagles Landing Apartments, LP, April Woods Apartments, L.P., Harmony Woods Apartments, L.P., and their surety, and one half to Appellees, Vanecia Kimbrow, Tate & Kimbrow, PLLC, Fearnley & Califf, and Community Title, for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE