IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 18, 2015 Session

**TIM E. SHAW v. FSGBANK, N.A.**

**Appeal from the Circuit Court for Bradley County**
**No. V10865     Jerri S. Bryant, Chancellor[1]**

_____

**No. E2014-01365-COA-R3-CV-FILED-AUGUST 31, 2015**
_____

In 2007, Tim E. Shaw contacted FSGBank, N.A. (FSG) regarding the refinancing of multiple loans.  FSG initiated the processing of his request for refinancing; in the meantime, it extended to him a new loan for $60,000 to enable him to purchase another piece of property for investment purposes.  The new loan was secured by a trust deed on property he owned at 430 Highland Avenue in Cleveland, Tennessee.  In 2010, after an apparent default by Mr. Shaw on the $60,000 loan, FSG sought foreclosure proceedings on the Highland Avenue property and advertised a trustee sale.  As a result, Mr. Shaw filed a complaint against FSG in 2010.  He alleged a number of claims, specifically (1) breach of an agreement for future loans; (2) breach of contract; (3) conversion; (4) fraud; and (5) misrepresentation.  FSG subsequently filed a motion for judgment on the pleadings, contending that Mr. Shaw's complaint failed to state an actionable claim as there was not in existence a written agreement by FSG to make additional loans.  Further, FSG claimed that Mr. Shaw's misrepresentation claim was barred by the statute of limitations and because it was based upon FSG's alleged failure to make loans it never agreed to make.  The trial court granted FSG's motion for judgment on the pleadings after finding that (1) Mr. Shaw's claim for breach of promise to make additional loans was barred by Tenn. Code Ann. § 29-2-101(b)(1) (2012) because he failed to allege that such a promise was in writing and failed to attach a written copy of the promise to his complaint; (2) the fraud-based claims were not pled with the required specificity; and (3) Mr. Shaw failed to allege the essential elements of his remaining claims and failed to articulate sufficient support for those claims.  Mr. Shaw appeals.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., C.J., delivered the opinion of the court, in which D. MICHAEL SWINEY and THOMAS R. FRIERSON, II, JJ., joined.

---

[1] Sitting by interchange.

Tim E. Shaw, Cleveland, Tennessee, appellant, pro se.

Donald J. Aho, Robert F. Parsley, and Lynzi J. Archibald, Chattanooga, Tennessee, for the appellee, FSGBank, N.A.

## OPINION

### I.

Mr. Shaw, a practicing attorney and member of the Tennessee bar, sought to refinance loans from Regions Bank for various investment properties. Ultimately, he contacted FSG, a bank operating in Tennessee and northern Georgia. The record reflects that on March 26, 2007, Deidre Kimbrell, a branch manager with FSG, emailed Mr. Shaw seeking more information from him so that FSG could determine the best rate it could offer to refinance his loans. In particular, Ms. Kimbrell asked for a current financial statement from Mr. Shaw and inquired about sixty-four rental properties he owned. Thereafter, on April 9, 2007, Ms. Kimbrell emailed Mr. Shaw two options for his loan request. The first option proposed a $607,580.00 loan amount with a projected closing cost of $8,078.74; the second option was a $662,165.00 loan with a projected cost of $10,320.41 at closing. On April 10, 2007, Ms. Kimbrell emailed Mr. Shaw a third option proposing a loan of $524,761.00 with an estimated closing cost of $3,875.00. Each of the three loan options would use separate combinations of Mr. Shaw's properties as collateral.

On April 17, 2007, Ms. Kimbrell sent Mr. Shaw a message indicating that FSG was in the process of analyzing his financial information and had submitted appraisal orders for two properties that Mr. Shaw intended to use as collateral. In addition, Ms. Kimbrell mentioned Mr. Shaw's intention to purchase a piece of property at 3799 Dixie Court SE, Cleveland, Tennessee, and the possibility of FSG giving him a $50,000 unsecured loan to aid in the purchase of that property. Mr. Shaw subsequently responded to Ms. Kimbrell later that evening, indicating that he would like the loan from FSG to be for $60,000 with a twenty year amortization. On April 19, 2007, Ms. Kimbrell stated that if FSG could secure the loan for the Dixie Court property with one of the properties Mr. Shaw already owned free and clear, she could have the $60,000 loan ready for him as early as April 23, 2007. A few hours later, Mr. Shaw consented to FSG using his existing property at 430 Highland Avenue in Cleveland, Tennessee, to secure the loan.

On April 25, 2007, Mr. Shaw received documents from Ms. Kimbrell regarding a $60,000 loan with a fifteen year amortization secured by his Highland Avenue property. In a letter that accompanied these loan documents, Ms. Kimbrell instructed Mr. Shaw to

sign all of the necessary documentation and return them to her so that she could finalize the $60,000 loan. Further, Ms. Kimbrell alluded to the larger loan that Mr. Shaw had requested when he originally reached out to FSG and notified him that she was still processing his request. Mr. Shaw subsequently executed the papers for the $60,000 loan, which called for fifty-nine monthly payments of $557.43 and one balloon payment of $47,502.28.

On May 18, 2007, Ms. Kimbrell emailed Mr. Shaw and notified him that she was still working on the larger loan he had originally requested and needed additional information regarding Mr. Shaw's loan payoffs to Regions Bank. On May 29, 2007, Ms. Kimbrell sent Mr. Shaw an email requesting information regarding Mr. Shaw's partnership debts. On June 7, 2007, Ms. Kimbrell informed Mr. Shaw that his loan had been put on hold because she needed updated information regarding loan payoffs to Regions Bank and had to correct "the compliance issue with the flood property" she had previously discussed with him.

On June 15, 2007, FSG sent Mr. Shaw copies of the appraisal reports for his properties at 5787 Mouse Creek Road NW, Cleveland, Tennessee, and 1215 Collegeview Drive NW, Cleveland, Tennessee. The Mouse Creek property was appraised at $241,500, and the Collegeview property was valued at $295,000. On June 25, 2007, Ms. Kimbrell sent an email to Mr. Shaw's colleague Lisa that stated, "Pending the final payoff amounts the terms are as follows. 7.50% 5 year fixed 20 year amortization[.] I will get the closing costs to you. I'm going to try and discount the loan fee since you guys were so patient. Thanks." The following day, on June 26, 2007, Lisa sent a message to Ms. Kimbrell detailing the payoffs for Mr. Shaw's loans with Regions Bank. Ms. Kimbrell replied shortly thereafter and said, "The loan for 22040.36 has a 6.5% rate. Are we paying it off?" The record contains no further correspondence between the parties.

Over three years later, Mr. Shaw filed a complaint against FSG on October 14, 2010. His claims pertained to the $60,000 loan, secured by the Highland Avenue property, foreclosure proceedings related to the Highland Avenue property, and the larger loan he originally requested, ostensibly to be secured by the Mouse Creek and Collegeview properties, which FSG had yet to finalize based upon the material before it. In his complaint, Mr. Shaw stated that he had "continually paid the payments with regularity" on the $60,000 loan, payments he said FSG had accepted "in a manner contemplated and agreed to between the parties, consistent with the true agreement of the parties, and not necessarily in complete conformity with the adhesion contracts as written." Further, he alleged that FSG (1) "misrepresented facts and/or made assertions not in accord" with its promise to grant him additional loans on certain terms; (2)

3

executed adhesion contracts when it sent him a note and deed of trust on the Highland Avenue property to secure his loan for the purchase of the Dixie Court property; (3) misrepresented the terms and conditions pertaining to the Highland Avenue note and deed of trust, which were "unconscionable in their terms, unreasonably favorable, as written, to [FSG], and . . . ambiguous and misleading;" (4) sought "to use the fraudulently induced instruments, the Note and Deed of Trust, to [a]ccelerate the terms of the Note, and to Foreclose on the Deed of Trust;" (5) has not complied with the terms of the note and deed of trust; (6) was "acting in a manner inconsistent with the terms of the Note and Deed of Trust" resulting in a "material breach of the contracts" that is "outrageous, unreasonable, unforeseeable . . . not in Good Faith, and unconscionable;" and (7) has committed and is committing conversion of his interest in the Highland Avenue property. In addition, Mr. Shaw claimed that he was entitled to relief "due to Fraud in the Factum," a full accounting of all money paid by him to FSG, and the "right to quiet and peaceful enjoyment" of the Highland Avenue property. Mr. Shaw sought $575,149.57 in damages. Alternatively, he requested reformation of the contract relating to the Highland Avenue property; specific performance as to that contract; specific performance relating to new loans he believed he was entitled to; damages for the breach of contract to make such new loans; or rescission of the contract relating to the Highland Avenue property and a return of all money paid under the terms thereof.

Mr. Shaw obtained a temporary restraining order on October 19, 2010, which enjoined FSG from advertising or conducting a trustee sale of the Highland Avenue property. The temporary restraining order was subsequently dissolved after the parties reached an agreed order on November 24, 2010, wherein FSG agreed to abstain from taking action to foreclose on the Highland Avenue property until further proceedings had taken place.

On November 12, 2010, FSG filed its answer, which asserted nine affirmative defenses: (1) the complaint fails to state a claim upon which relief could be granted; (2) the claims were barred by the applicable statutes of limitations and repose; (3) the claims were barred by all applicable statutes of frauds; (4) FSG owed Mr. Shaw no fiduciary duty; (5) FSG made no actionable misrepresentation of material fact; (6) Mr. Shaw never relied upon any misrepresentation by FSG; (7) the claims were barred by the doctrine of accord and satisfaction; (8) the claims were barred by the doctrine of estoppel, laches, and waiver; and (9) the claims were barred by the doctrine of unclean hands. Over three years later, on December 3, 2013, FSG filed a motion for judgment on the pleadings. Specifically, FSG contended that Mr. Shaw's complaint failed to state an actionable claim because, pursuant to Tenn. Code Ann. § 29-2-101(b)(1), there was not a written agreement between them for FSG to make the additional loans Mr. Shaw referred to in his complaint. Additionally, FSG asserted that Mr. Shaw's misrepresentation claim

4

should be dismissed because, in addition to being barred by the statute of limitations pursuant to Tenn. Code Ann. § 28-3-105 (Supp. 2014), it was based on FSG's failure to make loans it was under no obligation to make.

On February 5, 2014, Mr. Shaw filed an answer to FSG's motion for judgment on the pleadings. In his response, Mr. Shaw attached a series of documents that he claimed formed the basis of a written agreement for FSG to make additional loans to him. Further, he also argued that his claim was not barred by the statute of limitations because his cause of action was for breach of contract. Thus, Mr. Shaw asserted that Tenn. Code Ann. § 28-3-109(a)(3) (2000) governed his complaint and allowed him to bring it within six years from the time when the basis for his claim occurred. He also maintained that his allegation of fraud in the inducement had a three year statute of limitations, citing two Supreme Court cases in support of his argument. As for his conversion claim, Mr. Shaw stated that "the Statute of Limitations is believed to be either three years or one year" without providing a citation to any supporting authority. Finally, Mr. Shaw argued that there were genuine issues of material fact that precluded entry of summary judgment as a matter of law.

On March 17, 2014, the trial court signed a scheduling order, which had been agreed to by both Mr. Shaw and FSG. Most pertinent to this appeal, the deadline for filing motions to amend or to supplement the pleadings was set for April 21, 2014. However, four days after that deadline and only four days before a scheduled hearing, Mr. Shaw filed a motion for leave to file a first amended original complaint on April 25, 2014.

A hearing took place on April 29, 2014, regarding FSG's motion for judgment on the pleadings. Thereafter, the court entered a memorandum and order on June 23, 2014, granting FSG's motion for judgment on the pleadings. First, the court concluded that Mr. Shaw's claim for breach of promise to make additional loans was barred by Tenn. Code Ann. § 29-2-101(b)(1), as Mr. Shaw did not allege in his complaint that any such commitment was in writing and did not attach a copy of any such writing to his complaint. Second, the trial court dismissed the fraud-based claims because Mr. Shaw failed to plead those claims with the required specificity. Finally, the court disposed of the remaining claims by highlighting Mr. Shaw's failure to allege the essential elements of those claims and failure to articulate sufficient factual support for those claims.

Mr. Shaw filed a notice of appeal on July 18, 2014. The following issues are now before us on appeal: (1) whether the trial court abused its discretion by granting FSG's motion for judgment on the pleadings; (2) whether the trial court abused its discretion by denying Mr. Shaw's motion for leave to file an amended complaint; and (3) whether the

trial court abused its discretion by excluding evidence outside the pleadings when deciding FSG's motion for judgment on the pleadings.

## II.

### A.

A motion for judgment on the pleadings is essentially "a motion to dismiss for failure to state a claim upon which relief can be granted." *King v. Betts*, 354 S.W.3d 691, 709 (Tenn. 2011) (quoting *Timmins v. Lindsey*, 310 S.W.3d 834, 838 (Tenn. Ct. App. 2009)) (quotation marks omitted.) A motion for judgment on the pleadings "admits the truth of all relevant and material averments in the complaint but asserts that such facts cannot constitute a cause of action." *Waldron v. Delffs*, 988 S.W.2d 182, 184 (Tenn. Ct. App. 1998). Both the trial court and this court must accept as true "all well-pleaded facts and all reasonable inferences drawn therefrom" alleged by the party opposing the motion. *Cherokee Country Club v. City of Knoxville*, 152 S.W.3d 466, 470 (Tenn. 2004) (quoting *McClenahan v. Cooley*, 806 S.W.2d 767, 769 (Tenn. 1991)). In addition, "[t]he ultimate determination of whether the facts alleged make out a cause of action is a question of law," and "[o]ur review of questions of law is de novo, with no presumption of correctness." *Shaw v. Cleveland Util. Water Div.*, No. E2009-00627-COA-R3-CV, 2009 WL 4250157, *4 (Tenn. Ct. App. E.S. Nov. 30, 2009) (citing *Gunter v. Lab. Corp. of Am.*, 121 S.W.3d 636, 638 (Tenn. 2003)).

When reviewing the propriety of the trial court's decision to grant FSG's motion for judgment on the pleadings, we must necessarily analyze three sub-issues: (1) the dismissal of Mr. Shaw's claim for breach of an agreement to make loans; (2) the decision to bar Mr. Shaw's fraud-based claims because they were not sufficiently pled; and (3) the dismissal of any of Mr. Shaw's remaining claims because they were not sufficiently pled.

### B.

Tenn. Code Ann. § 29-2-101(b)(1) states:

> No action shall be brought against a lender or creditor upon any promise or commitment to lend money or to extend credit, or upon any promise or commitment to alter, amend, renew, extend or otherwise modify or supplement any written promise, agreement or commitment to lend money or extend credit, unless the promise or agreement, upon which such action shall be brought, or some memorandum or note

6

> thereof, *shall be in writing and signed by the lender or creditor, or some other person lawfully authorized by such lender or creditor.*

Tenn. Code Ann. § 29-2-101(b)(1) (emphasis added.) Under the clear terms of this statute, FSG's promise or commitment to lend Mr. Shaw money must have been in writing and signed by an authorized representative of FSG in order for this claim to be actionable under Tenn. Code Ann. § 29-2-101(b)(1). Though the record before us contains a great deal of correspondence between Mr. Shaw and FSG's branch manager, Ms. Kimbrell, none of those emails set forth a definitive agreement by FSG to extend additional loans to Mr. Shaw. On the contrary, these emails from FSG propose various options for potential additional loans, request more financial information from Mr. Shaw on multiple occasions, and continually emphasize that the loan process for these additional loans was still ongoing and not yet finalized. Ultimately, the only loan between FSG and Mr. Shaw that was actually finalized and reduced to a signed agreement pertained to the $60,000 loan secured by the Highland Avenue property. That loan would satisfy the requirements of Tenn. Code Ann. § 29-2-101(b)(1), as there was a signed letter from Ms. Kimbrell confirming the details of the loan, together with a deed of trust and a note signed by both Mr. Shaw and Ms. Kimbrell. After a thorough review of the record, it is quite clear that FSG never made an actionable promise or commitment in writing, which would satisfy Tenn. Code Ann. § 29-2-101(b)(1), to provide Mr. Shaw with any loans beyond the $60,000 loan secured by the Highland Avenue property.

Mr. Shaw's claim that FSG breached an agreement to provide future loans is also deficient from a procedural standpoint. Tenn. R. Civ. P. 10.03 states:

> Whenever a claim or defense is founded upon a written instrument other than a policy of insurance, *a copy of such instrument or the pertinent parts thereof shall be attached to the pleadings as an exhibit* unless the instrument is (1) a matter of public record in the county in which the action is commenced and its location in the record is set forth in the pleading; (2) in the possession of the adverse party and this fact is stated in the pleading; (3) inaccessible to the pleader or is of such nature that attaching the instrument would be unnecessary or impracticable and this fact is stated in the pleading, together with the reason therefor. Every exhibit so attached or referred to under (1) and (2) shall be a part of the pleading for all purposes.

Tenn. R. Civ. P. 10.03 (emphasis added.) Mr. Shaw's complaint, however, had no exhibits attached at all, much less an exhibit evidencing a written agreement between FSG and Mr. Shaw for FSG to loan him money. Further, none of the exceptions to Tenn. R. Civ. P. 10.03 are applicable in this case. While Mr. Shaw contends in his brief that the loan agreement for future loans from FSG was part of the public record, his assertion is erroneous. Specifically, those documents, the note and deed of trust pertaining to the Highland Avenue property, concerned a $60,000 loan that FSG did agree to and actually made to Mr. Shaw. However, that note and deed of trust for the Highland Avenue property, which are a part of the public record, bear absolutely no relation to the alleged promise to provide the additional loans that form the basis of this sub-issue. The remaining exceptions also do not apply, as Mr. Shaw never alleged in his complaint that FSG possessed a written agreement or that a written agreement between the parties was inaccessible.

Ultimately, Tenn. Code Ann. § 29-2-101(b)(1) and Tenn. R. Civ. P. 10.03 both warrant the dismissal of Mr. Shaw's claim against FSG for breach of an agreement for future loans.

## C.

Tenn. R. Civ. P. 9.02 governs fraud-based claims in Tennessee and provides, "In all averments of fraud or mistake, *the circumstances constituting fraud or mistake shall be stated with particularity.*" Tenn. R. Civ. P. 9.02. In his complaint, Mr. Shaw alleges fraud and misrepresentation by FSG on multiple occasions. Nevertheless, all of these allegations of fraud and misrepresentation lack any degree of specificity from a factual standpoint. For example, Mr. Shaw states the following in his complaint:

> Your Plaintiff, Tim E. Shaw, would show that the Note and Deed of Trust are adhesion contracts, offered to the Plaintiff by the Defendant, *upon such terms and conditions that were misrepresented to the Plaintiff* by the Defendant at the time the misrepresentations were made, that Defendant had no intention of carrying out and performing the promises and assertions at the time the promises and assertions were made and that *Plaintiff, with little or no bargaining power, foreseeably and reasonably relied on the promises, assertions and misrepresentations of the Defendant* and that Defendant acted contrary to the terms and conditions of the adhesion contracts, Note and Deed of Trust, throughout the course of dealing with the Plaintiff, *further misleading the Plaintiff.*

(Emphasis added.) First, Mr. Shaw claims that the note and deed of trust[2] pertaining to the Highland Avenue property were offered under terms and conditions that were "misrepresented" to him, yet never articulates exactly how they were misrepresented. Similarly, Mr. Shaw indicates he relied on "promises, assertions, and misrepresentations" by FSG, yet he never explains exactly what those promises, assertions, and misrepresentations were. Finally, Mr. Shaw concludes this section of his complaint by saying he was further misled by FSG throughout the course of dealing with the bank, and again fails to express how exactly he was misled.

Other examples of Mr. Shaw's lack of specificity in his complaint only compound the deficiencies of his fraud-based claims. Specifically, he characterizes the note and deed of trust pertaining to the Highland Avenue property as "fraudulently induced instruments" and again neglects to explain exactly how these documents were "fraudulently induced." In addition, he alleges that he is entitled to relief due to "Fraud in the Factum *as the facts may reveal by the testimony expected by the Plaintiff to be given at trial*." (Emphasis added.) Indeed, Mr. Shaw's explanation for his fraud in the factum charge runs completely afoul of Tenn. R. Civ. P. 9.02, as he makes absolutely no attempt to offer an explanation for the circumstances that precipitated the fraud in the factum he has alleged. Rather, Mr. Shaw apparently believes that, by saying his expected testimony at a future trial will reveal the facts behind his fraud in the factum allegation, his claim would be sufficient to overcome the particularity requirement of Tenn. R. Civ. P. 9.02. Simply put, it is not.

As this Court has previously held, "[u]nder Rule 9.02, conclusory statements are not sufficient to make out a cause of action sounding in fraud." *PNC Multifamily Capital Inst. Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 551 (Tenn. Ct. App. 2012). All of the preceding allegations are wholly conclusory in nature and provide no degree of particularity that could overcome the pleading requirement of Tenn. R. Civ. P. 9.02. As a result, the trial court's dismissal of Mr. Shaw's fraud-based claims was proper.

---

[2] We decline to address Mr. Shaw's attempts to characterize the note and deed of trust pertaining to the Highland Avenue property as adhesion contracts. They obviously are not.

## D.

In his complaint, Mr. Shaw's remaining claims alleged breach of contract and conversion.[3] In order to establish a claim for breach of contract, one "must prove the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach." *Federal Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011) (citing *ARC LifeMed, Inc. v. AMC–Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)). In this case, Mr. Shaw's breach of contract allegation pertains to the note and deed of trust for the Highland Avenue property and FSG's decision to post an advertisement in the *Cleveland Daily Banner* for a trustee sale of that property. The record reflects a valid and enforceable contract between Mr. Shaw and FSG, as evidenced by the letter from Ms. Kimbrell referencing the $60,000 loan and the note and deed of trust for the Highland Avenue property executed by Mr. Shaw and FSG. This breach of contract claim fails, however, because Mr. Shaw neglected to explain both how FSG breached the contract and what damages Mr. Shaw incurred. Specifically, Mr. Shaw alleges that FSG is "now seeking to use the fraudulently induced instruments . . . to Accelerate the terms of the Note and Deed of Trust," has advertised a trustee sale for the Highland Avenue property, has demanded additional payments, has not complied with the terms of the note and deed of trust, and is "now acting in a manner inconsistent" with the terms of the note and deed of trust in a way that constitutes a material breach. This entire allegation for breach of contract ostensibly stems from FSG's decision to foreclose on the Highland Avenue property. Nevertheless, the record provides no insights into what precipitated these foreclosure proceedings and FSG's decision to put the Highland Avenue property up for a trustee sale. Further, Mr. Shaw has provided no context for his conclusory allegations against FSG as to this claim. As a result, we are unable to find a breach by FSG in the absence of actual facts indicating that a breach occurred. In a similar fashion, Mr. Shaw fails to present evidence of the damages he has suffered as a result of FSG's alleged breach. Rather, he merely states that FSG's actions were "all to the detriment of the Plaintiff." Such an allegation is simply an insufficient allegation of damages. Thus, Mr. Shaw's breach of contract claim was properly dismissed, as it failed to explain two essential elements of a breach of contract claim.

---

[3] In his brief on appeal, Mr. Shaw discusses promissory estoppel for the first time. He alleges that the trial court erred by failing to recognize the elements of promissory estoppel, even though he never once raised this claim at the trial court level. The Supreme Court has previously held that, "Issues not raised in the trial court cannot be raised for the first time on appeal." *Barnes v. Barnes*, 193 S.W.3d 495, 501 (Tenn. 2006) (citing *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991)).

Mr. Shaw's conversion claim is equally deficient. Conversion is "the appropriation of another's property to one's own use and benefit, by the exercise of dominion over the property, in defiance of the owner's right to the property." **Ralston v. Hobbs**, 306 S.W.3d 213, 221 (Tenn. Ct. App. 2009) (citing **Hanna v. Sheflin**, 275 S.W.3d 423, 427 (Tenn. Ct. App. 2008)). Similar to the fraud-based claims discussed earlier, an allegation of conversion must be pled with particularity under Tenn. R. Civ. P. 9.02. **PNC**, 387 S.W.3d at 555. Further, "Rule 9.02 requires particularity – i.e. singularity – of or pertaining to a single or specific person, thing, group, class, occasion, etc." **Id**. Finally, to be liable for conversion, "the defendant need only have an intent to exercise dominion and control over the property that is in fact inconsistent with the plaintiff's rights, and do so." **Hanna**, 275 S.W.3d at 427 (quoting **Mammoth Cave Prod. Credit Ass'n v. Oldham**, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977)) (quotation marks omitted.)

Mr. Shaw's claim for conversion states,

> Your Plaintiff, Tim E. Shaw, would show that the Defendant, FSGBANK has committed and is committing conversion of the Plaintiff's property interest by wrongfully accelerating the Note, wrongfully executing the power of sale of the Trustee and instructing said Trustee to advertise and sell the Plaintiff's property, and by the material breach of contract causing him harm and financial injury.

To start, Mr. Shaw's conversion claim does not specifically identify the piece of property that he alleges FSG is attempting to appropriate. Rather, we are forced to guess from the overall context of his complaint that he is referring to the Highland Avenue property. As a result, this claim lacks the required particularity of Tenn. R. Civ. P. 9.02 as discussed in the **PNC** case. Further, Mr. Shaw's conversion allegation simply lacks any proof of FSG's "intent to exercise dominion and control over the property that is in fact *inconsistent with the plaintiff's rights*." **Hanna**, 275 S.W.3d at 427 (emphasis added.) Just like the breach of contract claim, Mr. Shaw fails to show that FSG intended to foreclose on the Highland Avenue property and advertise a foreclosure sale in a way that was inconsistent with his rights to the property. This conversion claim provides no details regarding either party's rights to the Highland Avenue property beyond the note and deed of trust executed by both parties, much less information pertaining to subsequent actions by either party that would affect a right to the property. In the absence of facts showing that FSG's actions relating to the Highland Avenue property were actually inconsistent with Mr. Shaw's right to that property, this conversion claim is

11

simply deficient. Thus, the trial court properly dismissed Mr. Shaw's allegation of conversion by FSG.

## III.

The decision to grant or deny a motion to amend is "within the sound discretion of the trial court and will be reversed only for an abuse of discretion." ***Buman v. Gibson***, No. W2013-01867-COA-R3-CV, 2014 WL 3893293, at \*6 (Tenn. Ct. App. W.S., Aug. 11, 2014) (citing ***Merriman v. Smith***, 599 S.W.2d 548, 559 (Tenn. Ct. App. 1979)). A trial court abuses its discretion "when it applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." ***Kelly v. Kelly***, 445 S.W.3d 685, 692 (Tenn. 2014) (citing ***State v. Banks***, 271 S.W.3d 90, 116 (Tenn. 2008)). However, the abuse of discretion standard does not allow an appellate court to substitute its judgment for that of the trial court, and a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001).

In the present action, Mr. Shaw filed his initial complaint on October 14, 2010, and FSG filed an answer on November 12, 2010. Thereafter, the record reflects practically no activity in this matter until FSG served Mr. Shaw with both its first request for production of documents and its first set of interrogatories on November 27, *2013*. Days later, FSG submitted a motion for judgment on the pleadings on December 4, 2013. The record subsequently indicates no activity in this case until a scheduling order, which was agreed to by both parties, was signed by the trial court on March 17, 2014. In the ensuing weeks, FSG filed a motion to compel discovery on April 4, 2014, attaching the November 27, 2013 discovery requests as an exhibit. The record does not include any response by Mr. Shaw as to these discovery requests. On April 15, 2014, FSG filed a notice of hearing, which stated that the trial court had scheduled a hearing on April 29, 2014, regarding FSG's motion for judgment on the pleadings. Four days before the April 29, 2014 hearing, and four days *after* the court-ordered deadline to file motions to amend or supplement the pleadings, and over three years after his initial complaint, Mr. Shaw filed a motion for leave to file a "First Amended Original Complaint."

Tenn. R. Civ. P. 15.01 states,

> A party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been set for trial, the party

> may so amend it at any time within 15 days after it is served. Otherwise, a party may amend the party's pleadings only by written consent of the adverse party or be leave of court.

Tenn. R. Civ. P. 15.01. FSG's answer to Mr. Shaw's initial complaint was filed over three years before Mr. Shaw filed his motion to amend. As a result, under Tenn. R. Civ. P. 15.01, Mr. Shaw could have only amended his complaint with the consent of FSG or the trial court. FSG never consented to an amended complaint, so the decision to grant the motion to amend was squarely with the trial court.

In Tennessee, "after a responsive pleading has been served, the denial of a motion to amend the pleadings lies within the sound discretion of the trial court. . . . [and] will not be reversed absent a showing of an abuse of that discretion." ***Hall v. Shelby Cnty. Retirement Bd.***, 922 S.W.2d 543, 546 (Tenn. Ct. App. 1995) (citing ***Merriman v. Smith***, 599 S.W.2d 548, 559 (Tenn. Ct. App. 1979)). A trial judge has several considerations to evaluate when determining whether to grant or deny a motion to amend, in particular, "*undue delay in filing*, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and *futility of amendment*." ***Hall***, 922 S.W.2d at 546 (citing ***Merriman***, 599 S.W.2d at 559) (emphasis added). As mentioned earlier, Mr. Shaw let over three years pass before he sought to amend his initial complaint, all the while ignoring FSG's discovery requests. Furthermore, his proposed amendments essentially pertained to clarifying that the alleged agreements and promises by FSG were in writing, a deficiency in his original complaint he may very well have discovered only when FSG pointed out this shortcoming in its motion for judgment on the pleadings. While stating that these agreements were in writing would satisfy Tenn. Code Ann. § 29-2-101(b)(1), Mr. Shaw was still required to attach these written agreements to his amended complaint as exhibits, pursuant to Tenn. R. Civ. P. 10.03. Just like his original complaint, Mr. Shaw failed to attach these documents to his proposed amended complaint. In addition, none of Mr. Shaw's proposed amendments sought to bolster his claims for fraud, breach of contract, and conversion with any factual context. Further, Mr. Shaw attempted to add on two additional claims: interference with his right to quiet and peaceful enjoyment and/or intentional interference with contractual relations. As with his claims for fraud, breach of contract, and conversion, these new claims are wholly conclusory in nature and provide no factual context that would render either claim actionable. Finally, Mr. Shaw's proposed amended complaint seeks an additional $2 million in damages without any explanation for such a large increase.

In our mind, Mr. Shaw's more than three years of inactivity after FSG's answer would be reason enough to find undue delay warranting denial of his motion to amend.

However, the nature of Mr. Shaw's proposed amendments, which would have done nothing to correct the overall deficiencies with his claims, lends even greater support to the trial court's decision to deny his motion to amend. In addition, his new claims suffer from the same deficiencies as the original claims. While we are certainly puzzled by Mr. Shaw's attempt to claim an additional $2 million in damages with no legitimate explanation for such an increase, we need not consider that issue in rendering our decision. Based upon the record before us, we find no abuse of discretion in the trial court's decision to deny Mr. Shaw's motion to amend, as undue delay in this case is quite apparent, and the proposed amendments were futile in nature.

## IV.

In Tennessee, the "admissibility of evidence is within the sound discretion of the trial judge." ***Otis v. Cambridge Mut. Fire Ins. Co.***, 850 S.W.2d 439, 442 (Tenn. 1992). When deciding whether to admit or exclude evidence, "trial courts are generally accorded a wide degree of latitude." ***Id***. As a result, a "trial court's decision to admit or exclude evidence will be overturned on appeal only where there is an abuse of discretion." ***Mercer v. Vanderbilt Univ., Inc.***, 134 S.W.3d 121, 131 (Tenn. 2004).

Tenn. R. Civ. P. 12.03 states,

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to *and not excluded by the court*, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Tenn. R. Civ. P. 12.03. Thus, under the clear wording of Tenn. R. Civ. P. 12.03, a trial court is free, in its sound discretion, to exclude evidence outside of the pleadings when deciding a motion for judgment on the pleadings.

In the present case, the trial court declined to consider Mr. Shaw's answer to FSG's motion for judgment on the pleadings, as well as Mr. Shaw's declaration in support of his opposition to FSG's motion for judgment on the pleadings. Specifically, the trial court stated,

[T]he Court considers it inappropriate for [Mr. Shaw], a licensed attorney, to respond to [FSG's] motion by filing a large number of documents and a declaration that describes some of those documents expecting the Court to parse through them to determine whether they show that [Mr. Shaw] has stated a claim for breach of a promise to lend monies. The Court declines to do so. While the Court has fully reviewed [Mr. Shaw's] Complaint, it was [his] responsibility to demonstrate in his response to [FSG's] motion [for judgment on the pleadings] how he has stated a cause of action for breach of a commitment to lend money. He has not done so.

Mr. Shaw's answer to FSG's motion for judgment on the pleadings focuses almost entirely on the statutes of limitations applicable to the claims he alleged in his complaint, before concluding by saying, "[T]here are Genuine Issues of Material Fact in this case that precludes [sic] the entry of Summary Judgment as a matter of law." Mr. Shaw then attached over sixty pages of documents, which he purported to be evidence of a written agreement by FSG to provide him with additional loans. While these documents provide a degree of context for his claims, context that was essentially lacking prior to this instance, Mr. Shaw made no attempt to explain how these documents verify the conclusory allegations in his original complaint, much less identify which of these documents actually constituted written agreements. Rather, Mr. Shaw maintains his position that "there is/are written agreement(s) between the parties" and leaves the Court to identify which documents those were. When considering the initial deficiencies of Mr. Shaw's claims together with the overall futility of his ineffectual response to FSG's motion for judgment on the pleadings, we believe the trial court did not abuse its discretion by excluding this evidence when ruling on FSG's motion.

## V.

The judgment of the trial court is affirmed. Costs on appeal are assessed to the appellant, Tim E. Shaw. The case is remanded to the trial court, pursuant to applicable law, for collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., CHIEF JUDGE